ALBERT McKINLEY, Respondent, v. THE CHICAGO, SANTA FE AND CALIFORNIA RAILWAY COMPANY, Appellant

Kansas City Court of Appeals, April 14, 1890.

Trespass: NOTICE OF PLAINTIFF'S RIGHT: LESSOR AND LESSEE: DEFENDANT'S CONTRACTOR. W., the owner, in November, by a mere parol lease, rented his farm for a year to plaintiff, who was to go into possession in March following. In January or February following, this contract was so modified as to make plaintiff an allowance for a right-of-way strip through the farm about to be sold by W. to the defendant railway company. On January 12, the defendant contracted the construction of roadbed to MacR., whose sub-contractors cleared the right of way in February, and on March 4 began the grading and completed it in the succeeding October.

VOL. 40—29

Said contractors threw down the fences whereby cattle entered upon the fields cultivated by plaintiff as tenant under his renting contract. For such damage so occasioned plaintiff brought trespass against the defendant railway. *Held—*

(1) That, though defendant might be held as a co-trespasser with the contractor MacR. if, at the time of making its contract with him, it could be charged with notice of the rights of plaintiff in the land (if any), yet the law does not charge one with notice of such a lease, and prior to taking possession a tenant under a verbal lease has no estate in lands.

(2) That those engaged in the construction of the road were in no sense the servants of the defendant.

(3) That the provisions of the contract that the work should be performed under the supervision of defendant's chief engineer, at whose directions objectionable employes should be discharged, do not have the effect to make the contractor and his employes the servants of the defendant.

*Appeal from the Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

Statement by the court.

This was an action in trespass to recover damages caused by the alleged unlawful entry by defendant, during the construction of its railroad, upon a farm of one hundred and sixty acres in Chariton county, Missouri. The gist of the action as alleged in the petition was that the defendant, by its agents, etc., "wrongfully and forcibly entered upon said premises, and then and there threw down, and removed and destroyed the fences inclosing said land and the cross fences thereto belonging, and wrongfully proceeded to construct a railroad entirely through and over said tract," etc. The answer of the defendant put in issue the allegations in the petition and also alleged that plaintiff had received compensation for the damage to his interest in the land upon which the railroad was constructed.

The defendant on January 12, 1887, entered into a contract with Williams, MacRitchie, Nichol and Williams, for the clearing of the right of way and the grading of the roadbed over the land in controversy. They in turn sublet to Elliott and Huss the clearing and grading of the property in controversy. In February, 1887, Elliott and Huss did the work of clearing the right of way on this property, and on March 4, following they went upon the right of way with their outfit and began the grading of the roadbed. They completed the work the following October or November. In entering upon the land they tore down the fences upon the right of way.

The owner of the land was E. J. Woods, wife of O. H. Woods. Plaintiff entered into a contract with Woods in November of 1886, for the renting of the farm for 1887, under which he took possession on March 1, 1887. In January or February, 1887, this contract was modified by plaintiff and Woods by mutual consent. Woods was negotiating for a sale of the right of way through the farm, and it was agreed between him and plaintiff that an allowance should be made the latter for the taking of the right-of-way strip. In the spring and summer of 1887 the fences were torn down by the contractors and their employes, in consequence of which cattle entered upon the fields being cultivated by plaintiff as tenant under his renting aforesaid. There was a verdict and judgment for plaintiff, and defendant appeals.

*Gardiner Lathrop, Kinley & Wallace* and *S. W. Moore,* for the appellant.

(1) Instruction number 3 asked by plaintiff and given does not properly declare the law. It is predicated upon facts which show a lawful entry, and which, if conceded, are fatal to this action of trespass. Plaintiff's own evidence showed that he had made settlement with his landlord for the loss of the strip of

ground constituting the right of way, and the putting of the ground in bad shape, before the construction of the road began, or before the fences were torn down. So far as he was concerned the entry was lawful. This action being in trespass for an unlawful entry, plaintiff cannot recover. Mills Em. Dom., sec. 142; *Rossiter v. Russell*, 18 N. H. 73; *Railroad v. Thompson*, 18 B. Mon. 735; *Railroad v. Jarrell*, 60 Texas, 267; *Thompson v. Railroad*, 21 S. C. 420; *Killrell v. Railroad*, 56 Vt. 96; *St. Julien v. Railroad*, 33 Am. & Eng. R. R. Cases, 92; Pierce on Railroads, pp. 169, 230; *Kanaga v. Railroad*, 76 Mo. 207. ( 2 ) Defendant's instruction number 1 was improperly refused. It correctly declared the law; there was evidence to warrant it, and it should have been given. Conceding the right to enter upon the land as against this plaintiff, the contractors had a legal right to tear down the fence; as is said in *Clark v. Railroad*, 36 Mo. 222 : "They had the lawful power and the right to construct the railroad through the plaintiff's farm and to pull down plaintiff's fences for that purpose." The entry being lawful, the contractors, and not this defendant, would be liable for any damage in the nature of trespass. *Hughes v. Railroad*, 15 Am. & Eng. R. R. Cases, 110; *Blumb v. City*, 84 Mo. 42; *Steele v. Railroad*, 32 Pa. St. 366; *McCoffrey v. Railroad*, 61 N. Y. 178; *Railroad v. Fitzsimmons*, 18 Kan. 34; *Cuff v. Railroad*, 6 Vroom, 17; *Pawlett v. Railroad*, 28 Vt. 297; *Reedie v. Railroad*, 4 Exch. 244; *Hobbett v. Railroad*, 4 Exch. 254; *Hunt v. Railroad*, 51 Pa. St. 475; *Eaton v. Railroad*, 59 Me. 520; *Schula v. Railroad*, 38 Barb. 653; *Callahan v. Railroad*, 23 Iowa, 562; *Tibbetts v. Railroad*, 62 Me. 437; *Clark v. Railroad*, 36 Mo. 202; *Ullman v. Railroad*, 67 Mo. 118; *Clark v. Railroad*, 28 Vt. 103; *King v. Railroad*, 66 N. Y. 181; *Steele v. Railroad*, 16 C. B. 550; *Hitte v. Railroad*, 29 Am. & Eng. R. R. Cases, 586. ( 3 ) The plaintiff's evidence to show any possession in him at

the time of the entry was set out in the petition. His evidence showed that the contractors had taken possession of the right of way in February, 1887, and had commenced the clearing and grubbing. Plaintiff did not go upon the farm until March 1, 1887. This is fatal to this action. (4) Upon the whole evidence the judgment should have been for the defendant. The action was not to recover on a statutory liability for failure to fence; that statute was not invoked in the petition, "either by reference to its title, the date of its passage, subject-matter or otherwise; nor did the petition state facts necessary to invoke the liability or duty imposed by that statute, or in any way show that the same was in the mind of the pleader." *Hall v. Railroad,* 97 Mo. 68. An action to recover for depredation of stock, caused by failure to maintain cattle-guard, is entirely different and distinct from an action of trespass. *Railroad v. Hayes,* 13 Am. & Eng. R. R. Cases, 597. There was no obligation to fence imposed upon the defendant independent of the statute. Wood on Railway Law, p. 1543. The action was purely one of trespass for an unlawful and forcible entry. The evidence showed a lawful entry. Defendant's instruction number 3 should have been given. (5) Even if the court should hold that the petition sufficiently invoked the statute requiring railroads to fence their rights of way, still plaintiff's instructions were erroneous, because they ignored the facts that defendant's duty to fence would not begin until a reasonable time had elapsed for the building of the fence. The liability would not commence until the duty to fence began. *Silver v. Railroad,* 78 Mo. 528. (6) Plaintiff's petition failed to allege that the fence inclosing the land was a lawful fence. This failure was not supplied by the evidence. There could be no liability for depredations of stock without allegation and proof that plaintiff's fence was a lawful one. R. S. 1889; *Mann v. Williamson,* 70 Mo. 661. (7) Even

if the entry were unlawful there is nothing to show that defendant authorized or consented to it. There can be no recovery in the absence of such showing. *Wattmeyer v. Railroad*, 30 Am. & Eng. R. R. Cases; *Steele v. Railroad*, 16 C. B. 549; *Hughes v. Railroad*, 39 Ohio St. 461; *Eaton v. Railroad*, 59 Me. 520; *Clark v. Railroad*, 36 Mo. 202.

*Crawley & Son*, for the respondent.

(1) The action of trespass being the remedy given by law for injuries to the possession, plaintiff below was entitled to maintain this action against the persons who tore down his fences, unless they are those by whose direction or for whose benefit it was done are able to justify: *First*. Under authority of law; or, *second*, under license from the tenant. 1 Redfield on Railways [5 Ed.] p. 362; 3 Sutherland on Damages, pp. 365, 447; Bliss on Code Pleading, sec. 22; Cooley on Torts, p. 302; *Biddle v. Hussman*, 23 Mo. 597; *Ullman v. Railroad*, 67 Mo. 118; R. S. 1879, sec. 2543; Cooley on Torts, p. 316; *Powers v. Hammert*, 51 Mo. 136; *Ring v. Bridge Co.*, 57 Mo. 497; *Walthen v. Warner*, 25 Mo. 277; *Kingsland v. Clark*, 24 Mo. 24; (2) The testimony discloses facts sufficient to fix the liability of defendant company as a principal in the trespass. The fences were thrown down by persons engaged in the construction of its road. It was represented there by an engineer having general supervision of the work, who knew of and accepted the avails of said trespass on behalf of the company. In such case the company is liable as a joint tort-feasor, with the contractor or sub-contractor and his servants. The doctrine of *respondeat superior* is not involved. 1 Redfield on Railways [5 Ed.] p. 528; Field on Private Corporations [2 Ed.] sec. 283, p. 434; 2 Morawetz on Private Corporations [2 Ed.] sec. 725, *et seq.;* 1 Sutherland on Damages, p. 211; *Williamson v. Fischer*, 50 Mo. 198; *Ullman v. Railroad*, 67 Mo.

McKinley v. The Chicago, S. F. & C. Ry. Co.

118. Particular attention is called to the decision last cited. There the distinction is made clear between the case of *Clark v. Railroad*, 36 Mo. 202, cited and relied on by appellant, and the case now in hand. (3) From what has preceded, it follows that the instructions, asked by plaintiff below, were properly given, and instructions 1, 2 and 3, asked by defendant, were properly refused. The instructions given, when taken together, present the law more favorably to appellant than the authorities warrant. Whatever error was committed in that regard was in appellant's favor. There is no merit in the point that the outside fence was not proven to be a lawful fence, or that respondent could have protected himself afterward by building new fences on each side of the right of way. A trespasser has no better right to pull down a five-rail fence than a ten-rail fence, staked and ridered ; and, whatever may have formerly been the view of the supreme court of this state, it is now held that the obligation upon a railway company to fence the sides of its track is imposed not only for the purpose of preventing animals from coming onto the track from adjacent lands, but also to prevent animals from going onto such lands off of the track. This fencing is required to be done within a reasonable time ; and, while plaintiff below was not entitled to recover on the ground of the company's neglect to fence its track for more than eight months after the destruction of his fences, yet this was the company's fault and not his. This duty is said to begin as soon as the danger of injury to property begins. Since the decision of *Clark v. Railroad*, 36 Mo. 202, so urgently pressed upon the court's attention by appellant here, the statute in regard to fencing has been materially changed ; thereby making the *Clark case* an all-round back number. *Silver v. Railroad*, 18 Mo. 528; s. c., 21 Mo. App. 5; *Donovan v. Railroad*, 89 Mo. 147.

ELLISON, J.—If defendant could on January 12, 1887, the date it let the contract of construction of the road, be charged with knowledge or notice of plaintiff's rights in the land (if any he had, not having yet taken possession under his lease), it would seem under the cases of *Ullman v. Railroad*, 67 Mo. 112 and *Williamson v. Fischer*, 50 Mo. 198, that it would be held as a co-trespasser with the contractors under the idea that it had directed the trespass. That is, it would be held to have contracted for, and directed a trespass against the rights of the tenant. The case shows that defendant at the date of its contract with the contractors, January 12, 1887, had the consent of Woods, the owner of the land, to construct the road, and would not, therefore, under the case of *Clark v. Railroad*, 36 Mo. 202, and the cases above cited, have been liable to him, had he remained in possession. The question, then, on this branch of the case is, did defendant have notice of any right existing in plaintiff at the time it acted in the matter. Our conclusion is it did not. Plaintiff's contract of renting, though entered into in November preceding defendant's contract, was a mere parol lease for a term not more than a year, and we are not aware of any law charging any one with notice of such lease, at least prior to taking possession under it. Prior to taking possession a tenant under a verbal lease has no estate in the lands. *Union Bank v. Gitting*, Md. 181 ; *Fincher v. Phillips*, decided this term. So then it appears that at the time defendant took its only action in the matter, viz., at the date of the contract, it committed no wrong against plaintiff for the reason that at that time he had no estate in the land, and whatever right, if any, he may have had was not known to defendant who was dealing by consent of the owner.

But it is plaintiff's theory that those engaged in the construction of the road were defendant's servants. We do not think so. The road was being built for

defendant, it is true, but defendant had contracted the construction to other parties who could in no sense be called its servants, unless by reason of a provision in the contract thereinafter set out. They were to build the roadbed ready for the superstructure according to the terms of the contract and deliver it over by a certain date. They employed their own hands and teams and furnished their own material, implements and tools. They were independent contractors. The relation of master and servant did not exist. *Barry v. City of St. Louis*, 17 Mo. 121 : *Hilsdorf v. City of St. Louis*, 45 Mo. 94 ; *Clark v. Railroad*, 36 Mo. 202.

This contract, it is true, provides that "the work shall be executed under the direction and supervision of the chief engineer of said railway company and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under the contract shall be determined." It further provides that, " If any foreman, agent, mechanic or laborer, employed by the contractors, shall, in the opinion of the engineer, execute his work in an unfaithful or unskilful manner, he shall forthwith, by the direction of the engineer, be discharged." These provisions in the contract are quite similar to those in *Blumb v. City of Kansas*, 84 Mo. 112. That case is controlling authority here, and we feel bound to follow it. There the city had power to suspend the work. The work was under the general supervision of the city engineer, and there, as in this case, the contractor was to discharge any workman whom the engineer directed to be discharged. We see no way by which plaintiff's case can stand, and, therefore, feel constrained to reverse the judgment. All concur.