## WILLIAMSON

v.

## SOUTHWESTERN BELL TEL. CO.

No. 43568.

Supreme Court of Missouri.

Division No. 2.

March 8, 1954.

Russell J. Horsefield, St. Louis, for plaintiff-appellant.

J. Porter Henry, Green, Hennings, Henry & Evans, John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondent.

BARRETT, Commissioner.

Mrs. Grace H. Williamson was injured when the automobile she was driving on Highway 30 in Franklin County was negligently struck by a Chevrolet truck traveling in the opposite direction, causing a pruning hook on a rack on the left side of the truck to crash through the windshield and strike her head. To recover $150,000 damages for her injuries Mrs. Williamson instituted this action against Southwestern Bell Telephone Company and Ross N. Lillard, doing business as Ross N. Lillard Tree Service. Upon the trial of her case the court directed a verdict in favor of Southwestern Bell Telephone Company and the jury returned a verdict against Mr. Lillard in the sum of $60,000. The plaintiff filed a motion for a new trial as to the telephone company which was overruled. Subsequently the plaintiff filed a stipulation of dismissal with prejudice as to Mr. Lillard and, accordingly, the court entered a judgment of dismissal as to him and, after proper notice, the plaintiff perfected her appeal as to the telephone company. Because of the stipulation, and its recital that as to Mr. Lillard the case "has been settled and compromised," and the judgment of dismissal with prejudice, the telephone company has filed a motion to dismiss the appeal as to it upon the assigned ground that the stipulation of dismissal was pursuant to a settlement with Mr. Lillard, and her action against the telephone company being dependent upon the relationship of master and servant beween Mr. Lillard or his employee, Howard, and the telephone company, the judgment of dismissal with prejudice constituted an adjudication against her on the merits of her cause of action, thereby rendering the question involved upon this appeal moot. In view of the conclusion we have reached upon the merits of the appeal, it is not necessary to consider the motion, and it is overruled.

The circumstances out of which this litigation arose are these: In 1951 Southwestern Bell Telephone Company was engaged in the installation of new and additional telephone lines over a rather large area in the vicinity of St. Clair. In part, the new installation involved the furnishing of telephone service to new subscribers. Plans for the construction of the new lines were prepared by the telephone company's engineers and turned over to Mr. Robert A. Campbell, the company's supervising construction foreman, for execution. For the most part the new lines were to be installed upon the poles and right of way of the Un-

ion Electric Company. The telephone company's own crews, under the general supervision of Mr. Campbell, strung the new wires and made the new installations. The new installation necessitated the clearing of the right of way of trees and brush, ten feet on each side of the right of way. The engineers' plans included detailed plats indicating the trees to be removed, the trees to be trimmed, and the brush to be cleared along the right of way. Upon receipt of the plans Mr. Campbell went over the proposed line with Mr. Lillard and Mr. Stauf, professional tree trimmers, and they made a survey of the work to be done, as indicated on the plats, the number of trees to be removed and the number of limbs and stands of brush to be removed. After the detailed survey Mr. Lillard and Mr. Stauf submitted written bids for the work to be done as indicated on the forty-five plats; the removal of 320 trees, the trimming of 591 trees, and the cutting of 397 "squares" of heavy brush. Mr. Lillard's bid of $6,950 being the low bid, Mr. Campbell let the contract to him, and on the 25th day of September 1951, the telephone company and Mr. Lillard entered into a written contract for the clearing of the right of way.

In addition to the consideration of $6,950 and the clearance of the right of way, as indicated on the numbered plats, by "Ross N. Lillard Tree Service of Webster Groves, Missouri," the contract provided that "The Contractor shall dispose of all timber and brush in the manner arranged for by the Telephone Company's representative and with the property owners." Mr. Lillard was to do the work indicated on the specified, detailed plats and *"The Contractor shall furnish all labor; tools, equipment, vehicles, and supervision required"* to remove the trees and to perform the work. The contractor was required to pay any damage to livestock in the course of the work and to take out and carry "Contractors' Public and Employees' and Owners contingent liability insurance," with limits of $15,000 and $30,000, and he agreed to indemnify the telephone company for any damage to its property and to indemnify and defend the telephone company for any suit or claim against it for injury to the person or property of others due to his neglect. And, "The Contractor shall re-execute at his own expense any work that fails to conform to the requirements of this contract * * *."

Mr. Lillard called himself "a tree trimmer." He had been in the business for several years, specializing in work for public utilities. He operated over the entire state of Missouri and sometimes in East St. Louis and had about ten competitors over the state. In November 1951 he had six trucks operating and four or five crews on different jobs, a crew consisting of a foreman with a truck and from three to seven workmen. His assistant and superintendent was Ray Huffine of Republic. Huffine had employed John Howard as a laborer while a crew was working at Neosho. Later Huffine promoted Howard to the job of foreman and sent him to St. Clair to clear the right of way under the contract. Mr. Lillard furnished Howard with a truck and the necessary tools and Howard employed the crew to perform the labor. The week preceding the accident the crew, all living in or near St. Clair, consisted of Howard, Bobby Dillinger, Hansel, Sohn and Donald Ware. Howard picked the crew up each morning in St. Clair in the truck and brought them back at the close of each day's work. He sent a weekly payroll to Mr. Lillard in Webster Groves, and Mr. Lillard, after deducting withholding and social security taxes, mailed the checks to Howard at St. Clair for delivery to the members of the crew. November 15th was a chilly, rainy day and Howard and his crew quit work about four-thirty in the afternoon. During the day Howard and some members of the crew had been drinking port wine mixed with rum. On the way to St. Clair they stopped at Lonedell and drank some beer, and a few minutes later, with four of them in the cab of the truck with Howard driving, the truck collided with Mrs. Williamson's automobile.

As the appellant urges, the sole question upon this appeal is the nature of the relationship between Mr. Lillard and Howard and the Southwestern Bell Telephone Company, and in this connection, the

appellant urges that the trial court erred in directing a verdict in favor of the telephone company and in overruling her motion for a new trial. It is first urged, since the telephone company is a public utility, incorporated under Chapter 392, RSMo.1949, V.A. M.S., it is "impressed with a public use," exercising franchise rights and privileges which it may not delegate to an independent contractor and thereby relieve itself of liability for the tortious acts of the contractor. It is urged that the work could only be accomplished by "the right of access or easement resting in the employer" and, therefore, the contractor remained the agent of the employer. It is said that the clearance of the right of way where existing lines were in service and additional lines were being placed in service and the operation of the truck by Howard were a "necessary and essential part of the rendition of adequate service to the customers, which was required of the Telephone Company by Statute" and could not be delegated to an independent contractor. In addition, it is urged that the work to be done, the clearing of the right of way and the operation of the truck by Howard, was accompanied by unreasonable risk of injury to others, therefore the relationship between the parties to the contract remained that of master and servant and not independent contractor. In general, the appellant invokes certain of the exceptions to the rule that an employer of an independent contractor is not liable for the contractor's negligence with respect to the improper manner in which the contractor executes the details of the work. Restatement, Torts, Sec. 426. The principal exception relied upon is that "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority * * * is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity." Restatement, Torts, Sec. 428; Annotation 28 A.L.R. 122.

In a sense, every act of a corporation is done under its charter, Boyd v. Chicago & N. W. Ry. Co., 217 Ill. 332, 337, 75 N.E. 496, but it does not follow merely because the corporation is a public utility that all its acts or contracts fall within the category of the nondelegable duties granted by the franchise. If a duty imposed by statute is relied upon, "In order that the employer may be charged with liability on this ground, the terms of the statute * * * in question must be of such a tenor as to subject him to a definite obligation in respect of the matter, or matters, to which the compact had relation." Annotations 23 A.L.R. 984, 989; 23 A.L.R. 1016; 23 A.L.R. 1084. The comment on Section 428 of the Restatement of Torts with respect to franchise rights is that "The rule stated in this Section does not apply to the erection of structures or the carrying on of activities which involve no special danger and which could be lawfully carried on or erected at the particular place by private persons without liability for the misconduct of the contractors to whom they are entrusted. This is so, although land has been acquired by eminent domain." Restatement, Torts, p. 1149. The rule as to nondelegable franchise duties is illustrated by the peculiarly applicable instances of common carriers who by lease or contract attempt to delegate to independent contractors their publicly granted franchise duties of transporting freight. Cotton v. Ship-By-Truck Co., 337 Mo. 270, 85 S.W.2d 80; Virgil v. Riss & Co., Mo.App., 241 S.W.2d 96; Peters v. St. Louis & S. F. R. Co., 150 Mo. App. 721, 131 S.W. 917. One of the cases relied upon by the appellant, involving the clearing of a railroad right of way, McGolderick v. Wabash Ry. Co., 200 Mo.App. 436, 200 S.W. 74, is illustrative of a nondelegable duty imposed by statute. But upon certiorari in that case, State ex rel. Wabash Ry. Co. v. Elllison, Mo., 204 S.W. 396, 398, certain distinctions were suggested, "that a corporation cannot delegate the exercise of its franchise grants and prviileges to another, but that there may be a wide difference between an attempt to contract franchise privileges and grants to another and merely contracting to have done certain work imposed by law upon the corporation. Charter grants and privileges are to be exercised by the corporation and are nondelegable. But might there not be a difference between charter duties and the mere doing

of work required by law, which is purely incidental to the performance of the charter duties of a corporation?"

■ Southwestern Bell Telephone Company has a franchise, no doubt, and its property and business may be "impressed with a public use" requiring it to maintain and furnish certain services. Bess v. Citizens' Telephone Co., 315 Mo. 1056, 287 S.W. 466. But in this case there is no specific statute, as there was in the McGolderick case, requiring the telephone company to keep its right of way, either new or old, clear of brush and trees which might interfere with good telephone service. Nor is there a statute imposing an obligation with respect to the transportation of tools and employees to and from work. The danger arose, particularly the danger from the operation of the truck, from the manner in which the work was performed and was not a danger inherent in the work of clearing right of way or the transportation of tools and employees so as to be nondelegable to an independent contractor. O'Hara v. Laclede Gas Light Co., 244 Mo. 395, 148 S.W. 884; Restatement, Torts, Sec. 427, comment p. 1148. The work involved here was necessary, preliminarily, to the furnishing of telephone service, and perhaps to continued good service, but it was not the carrying out of the franchise function or duty of operating a telephone company or of furnishing telephone service within the meaning of the exceptional rule preventing the delegation of the work to an independent contractor. Clark's Adm'x v. Hannibal & St. J. R. Co., 36 Mo. 202, 203; State ex rel. Wabash R. Co. v. Ellison, supra; Restatement, Torts, Sec. 428; Annotations 28 A.L.R. 122; 23 A.L.R. 984; Orange v. Pitcairn, 280 Ill.App. 566.

The appellant urges, if the subject matter of the contract does not fall within the exceptional rule of nondelegability, that by the terms of the written contract the telephone company reserved "sufficient right of control as to take Lillard out of the independent contractor relationship." In this connection her counsel points to the provision requiring the contractor to dispose of the timber or brush "in the manner arranged for by the Telephone Company's representative and with the property owners" and to a paragraph, not found in the contract, but said to provide that, "The contractor shall cut and prune all trees, shrubs and hedges in accordance with * * * 'Bell System Practices, Section G 10-327, 61, and tree pruning methods.'" It is also urged in this connection that the furnishing of blueprints and plats specifying exactly what work was to be done and the fact of the right of the telephone company foreman to direct which plot or plat Lillard's employees were to work in order to facilitate the performance of the entire work being done indicate that, under the terms of the contract, the telephone company retained such right of control as to destroy the claimed relationship of independent contractor.

■ The difficulty with the appellant's argument, once the doctrine of independent contractor is recognized and permitted as to a particular piece of work, annotation 18 A.L.R. 801, 807-808; Prosser, Torts, Sec. 64, p. 483, is that it ignores the general rule and definition of independent contractor. "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Restatement, Agency, Sec. 2(3); annotation 18 A. L.R. 801, 807. Under the rule, "stipulations which entitle the employer to exercise a certain measure of control over the work, but go no further than to enable him to secure that it shall be properly performed, do not affect the quality of contracts which, apart from those stipulations, would be construed as independent." Annotation 20 A. L.R. 684, 687. In this case the contract does not specifically reserve to the telephone company, its engineers or other employees control or supervision over Mr. Lillard or his employees other than as may be inferred from the requirements that he is to cut the trees in accordance with the telephone company's practices, which, like its charter, are not in the record, and that he is to dispose of the brush in the manner arranged by the

company with property owners. In constructing the new lines the tree trimming crews cleared the right of way ahead of the crews actually stringing the lines and there was an effort to correlate the two types of work but that does not mean that the telephone company or its employees so controlled or had the right to control Mr. Lillard or his employees and the manner in which the work was to be done as to destroy the relationship. In Salmon v. Kansas City, 241 Mo. 14, 145 S.W. 16, 18, 39 L.R.A., N.S., 328, the contract provided, among other specific directions, that "The first party shall commence work at such points as the engineer may direct, and shall conform to his directions as to the order of time in which the different parts of the work shall be done, as well as to all his other instructions as to the mode of doing the same." It was held, considering the contract as a whole, that "the powers given to the city engineer are solely for the purpose of securing compliance with the specifications provided in the contract. By no fair construction can the provision authorizing him to direct the mode of doing the work be held to mean that it is his duty to step in between the contractor and his servant, and direct the latter in the details of his operations." As to Mr. Campbell's correlating the work of the two crews it is necessary "to 'distinguish between authoritative direction and control and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger operation.'" Scherer v. Bryant, 273 Mo. 596, 604, 201 S.W. 900, 902. In McKinley v. Chicago, S. F. & C. Ry. Co., 40 Mo.App. 449, the contract provided that, "'the work shall be executed under the direction and supervision of the chief engineer of said railway company and his assistants'" but it was held that the clause did not have the effect of making the contractor and his employees the servants of the railroad. In McGrath v. City of St. Louis, 215 Mo. 191, 114 S.W. 611, 617, the contract required the contractor to "conform to the street commissioner's directions as to the order of time in which different parts of the work shall be done as well [as] to all his other instructions as to the mode of doing the same,"

and it was held that the purpose of these provisions was to secure, by way of proper supervision and inspection, a compliance with the contract and did not make the contractor the city's agent. This contract, considered in its essence and entirety, plainly established the relationship of independent contractor and the factors and clauses relied upon by the appellant do not reserve such right of control as to alter the relationship and are not sufficient to support the contrary inference of master and servant. McGrath v. City of St. Louis, supra; Salmon v. Kansas City, supra; Crenshaw v. Ullman, 113 Mo. 633, 20 S.W. 1077; Ross v. St. Louis Dairy Co., 339 Mo. 982, 98 S.W. 2d 717; Restatement, Agency, Sec. 2(3).

Finally the appellant urges, even though the contract "in express terms negatived the right of control over Lillard and his employees by the Telephone Company," the fact is not conclusive; and, when the practice of the parties under the contract and the direct and circumstantial evidence are all considered, annotation 20 A.L.R. 684, 686, favorably to the plaintiff, Skidmore v. Haggard, 341 Mo. 837, 841, 110 S.W.2d 726, 727, the nature of the relationship was for the jury. In urging that the trial court erred in directing a verdict for the telephone company, in view of these circumstances, it is said that it is "only where the facts as to said relationship are undisputed may the Court take the question from the jury." It may appear unduly technical, but a more accurate statement of the matter is that, "Where the facts are undisputed, the court may declare as a matter of law that one is or is not an independent contractor. But if the facts and legitimate inferences to be drawn therefrom are in dispute, the question is one for the jury." Baker v. Scott County Milling Co., 323 Mo. 1089, 1100, 20 S.W.2d 494, 497. The appellant lists and points to six particulars which are said to be sufficient to compel the submission of the question to the jury. What we have previously said concerning the written contract is sufficient to dispose of certain of the particulars relied upon. For example, two of the circumstances or factors, to be considered with the others, are "whether

Lillard or his employees had any discretion left to them in the physical conduct of the work since they followed specific plats and blueprints of the defendant's engineer, Ferguson," and "Campbell's testimony that he would give direction to Lillard and his foreman about clearance and brush removal if an occasion arose which required it." As with the written contract, this evidence and these factors were not sufficient to show an assumption of control of the physical activities of Lillard and his employees so inconsistent with the original relationship of independent contractor as to change their status to that of servants or employees. Skidmore v. Haggard, supra. The same is true of the assertion, if fully supported by the evidence, "whether the direction of a wire chief of the Telephone Company to Howard to accompany him in a Telephone Company truck to the Jackson farm did not show that the Telephone Company retained the right of direction and control of Lillard's employees if and when needed." The control relied upon in this case is not comparable to the cases of retailers, Mattan v. Hoover Co., 350 Mo. 506, 166 S.W.2d 557, or to the instance of the control actually asserted in Baker v. Scott County Milling Co., supra.

The other factors collectively asserted as making a jury question of the issue are whether Lillard was actually following an independent calling or whether he was not generally in the employ of the telephone company, whether the proposed bid and contract were not, in fact, only a method of reckoning the reasonable value of the work to be done, and whether the work being done by Mr. Lillard was simply a device used to supply common labor to the telephone company at low wages. Mr. Lillard was engaged in an independent business and

there is no evidence whatever that he was employed by the telephone company or that he ever rendered any personal service to the company, the marked characteristic of the relationship of master and servant. Coul v. Peck B. Dry Goods Co., 326 Mo. 870, 32 S.W.2d 758. Upon this record the contract was entered into in good faith by Mr. Lillard and the telephone company for the purpose of securing the execution of the job of clearing the designated right of way in accordance with the terms of the contract. It does not appear from either the contract or the circumstances that there was any purpose or intent to evade or circumvent any law, duty or liability. Orange v. Pitcairn, supra; annotation 20 A.L.R., loc.cit. 795. The fact that the work called for by the contract "belongs to that class particularly denominated 'common' or 'hard labor' " does not in and of itself alter the inferences to be drawn from the contract and the circumstances. Schroer v. Brooks, 204 Mo.App. 567, 583, 224 S.W. 53, 57. In short, it is not a fair or reasonably permissible inference, under the contract and all the circumstances, that the relationship between Mr. Lillard and his employees on the one hand and the telephone company on the other hand was other than that of independent contractor, accordingly the trial court did not err in directing a verdict and in overruling the plaintiff's motion for a new trial, and the judgment is affirmed.

WESTHUES and BOHLING, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.