Sharon HOUGLAND, Plaintiff–Appellant,

v.

PULITZER PUBLISHING CO., INC., Defendant–Respondent.

No. 69662.

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 25, 1997.

Steven N. May, St. Louis, for plaintiff–appellant.

Brown & James, P.C., Russell F. Watters, T. Michael Ward, St. Louis, for defendant–respondent.

HOFF, Judge.

Sharon Hougland (Hougland) appeals the trial court's entry of judgment notwithstanding the verdict after a judgment of $44,500 was entered against Pulitzer Publishing Co., Inc. (Pulitzer) for personal injuries Hougland sustained after being struck by a vehicle driven by David Carron (Carron), a newspaper distributor delivering newspapers printed by Pulitzer. We affirm.

At approximately 4:30 a.m. on October 2, 1992, Hougland was jogging and was struck by a van driven by Carron. Hougland suffered serious permanent injuries as a result of the accident. At the time of the accident, Carron was delivering the St. Louis Post Dispatch which is a newspaper printed by Pulitzer.

Hougland filed suit against Carron and his partner, and against Pulitzer. In her petition, Hougland alleged that Carron's negligence was the proximate cause of her injuries. Additionally, Hougland alleged Carron's negligent actions were within the scope and course of his employment for Pulitzer and as a result, Pulitzer should be held liable for Carron's negligence.

After a settlement was negotiated with Carron and his partner, Hougland dismissed them as defendants from the cause of action. A trial proceeded against Pulitzer as the remaining defendant. A jury returned a verdict in favor of Hougland and against Pulitzer finding that Hougland's damages totalled $210,000. The jury assessed Hougland's fault at 55 percent and Pulitzer's fault at 45 percent for the accident. After considering Hougland's $50,000 settlement with Carron and his partner and the comparative fault assessed against Hougland by the jury, the trial court entered judgment in the amount of $44,500 in favor of Hougland and against Pulitzer.

Pulitzer filed a motion for judgment notwithstanding the verdict, or in the alternative, a new trial. Although the trial court denied Pulitzer's motion for new trial, it sustained Pulitzer's motion for judgment notwithstanding the verdict. The trial court found that the undisputed material facts at trial established as a matter of law that Carron was an independent contractor and not an employee of Pulitzer when he was delivering newspapers. Thereafter, the trial court set aside the judgment entered on the jury verdict and entered judgment, *non obstante verdicto*, in favor of Pulitzer and against Hougland. This appeal followed.

In her only point on appeal, Hougland argues the trial court erred by sustaining Pulitzer's motion for judgment notwithstand-

ing the verdict. Hougland asserts that whether or not Carron was an employee of Pulitzer or an independent contractor was a fact issue for determination by the jury and not a matter of law for the trial court to decide. Hougland contends that she produced substantial evidence at trial from which the jury may have concluded that an employer-employee relationship existed.

■ We will affirm the entry of a judgment notwithstanding the verdict if the defendant was entitled to a judgment as a matter of law. *Thieme v. Tour–Toiseshell, Inc.*, 887 S.W.2d 795, 796 (Mo.App. E.D. 1994). When the facts are undisputed, the trial court may declare as a matter of law that one is or is not an independent contractor. *Williamson v. Southwestern Bell Tel. Co.*, 265 S.W.2d 354, 359 (Mo.1954). There is no issue of fact for the jury to decide "if the 'facts' alleged to be in dispute are actually differing opinions of the parties of the legal effect of documents or actions which determine their respective rights." *Roberts Fertilizer, Inc. v. Steinmeier*, 748 S.W.2d 883, 887 (Mo.App. W.D.1988). Interpretation of provisions within a contract is a matter of law for the trial court to decide, not a factual issue for resolution by the jury. *Smith v. Inter–County Tel. Co.*, 559 S.W.2d 518, 525 (Mo. banc 1977), *overruled on other grounds by Matteuzzi v. Columbus Partnership, L.P.*, 866 S.W.2d 128, 132 (Mo. banc 1993).

■ Hougland's theory of recovery at trial was based upon the doctrine of respondeat superior. Under the doctrine of respondeat superior, if an employee commits negligent acts or omissions within the scope of his employment, his employer is liable for the damages. *Wilson v. St. Louis Area Council, Boy Scouts*, 845 S.W.2d 568, 570 (Mo.App. E.D.1992). Only if a master-servant relationship exists between the parties does the doctrine of respondeat superior act to impose liability on an employer. *Id.* To determine if respondeat superior applies, it must be determined if the person sought to be charged as master had the right or power to control and direct the physical conduct of the other while working. *Id.* If there is no right to control, there is no liability because no master-servant relationship exists. *Id.*

■ If there is no right to control, the person contracted to perform the work is an independent contractor. "An independent contractor is one who contracts with another to do something for him but is neither controlled by the other nor subject to the other's control with respect to his physical conduct in the performance of the undertaking." *Tom Lange Co. v. Cleaning by House Beautiful*, 793 S.W.2d 869, 871 (Mo.App. E.D. 1990). Someone who contracts for the services of an independent contractor is generally not responsible for the wrongs committed by an independent contractor. *Id.*

■ The services provided by Carron for Pulitzer were governed by two documents—the "St. Louis Post Dispatch Home Delivery Service Agreement" and the "Carrier Performance Standards" document (documents). These documents were admitted into evidence at trial. The transcript filed with this Court reflects the testimony of three witnesses regarding these documents—Carron, Edward Bricker and Bernard Andrews.

Like Carron, Edward Bricker is a newspaper carrier contracted with Pulitzer. In addition, he is president of the St. Louis Post Dispatch Carriers Association. Bernard Andrews is the circulation manager at the St. Louis Post Dispatch. This Court's review of the transcript reveals that none of these witnesses' testimony disputed or called into question the terms of the two documents under which Carron provided services to Pulitzer.

■ Because nothing in the documents that governed Carron's work for Pulitzer was refuted by any witness, the determination of the relationship between Carron and Pulitzer is based solely on the interpretation of those documents. Because interpretation of contract provisions is a matter of law for the trial court to decide, not a factual issue for resolution by the jury, this issue was purely a matter of law for the trial court to decide by interpreting the two documents. Therefore, the status of the relationship between Carron and Pulitzer was not an issue for the jury to decide. Accordingly, we will affirm the entry of judgment notwithstanding the verdict if

the trial court was correct in determining that Carron was an independent contractor contracted to perform newspaper delivery services for Pulitzer.

Although Hougland cites various cases in other jurisdictions, we are constrained by *Skidmore v. Haggard*, 341 Mo. 837, 110 S.W.2d 726 (1937) in which the Supreme Court of Missouri held that a newspaper carrier, under a similar contract and responsible for similar duties to those of Carron, was an independent contractor. The facts in *Skidmore* reveal its similarities to the case at bar.

In *Skidmore*, Emory Skidmore (Skidmore) sued Troy Haggard (Haggard) and the Kansas City Star Company (the Star) after he was injured in an automobile accident with Haggard while Haggard delivered newspapers under contract with the Star. *Id.* at 727, 732. At the close of the evidence, the trial court gave the jury a peremptory instruction to find for the Star. *Id.* at 727. The jury then returned a verdict against Haggard alone for $5,000. *Id.* The main issue presented on appeal by Skidmore was whether the trial court's peremptory instruction to find for the Star was error. *Id.*

The Star contended that no jury case was made against it because the evidence conclusively showed that Haggard was an independent contractor contracted to deliver newspapers for the Star. *Id.* In determining the relationship between Haggard and the Star, the *Skidmore* court considered the contract and the working habits of Haggard.

The contract stressed that Haggard was responsible for prompt delivery of the newspapers and collecting money due. *Id.* at 728. The contract left the details of delivery, distribution and collection of money to the discretion of Haggard, specifically giving Haggard "(a) The right to designate routes and schedules for delivery ...; (b) a fixed weekly salary; (c) the right to terminate the relation at any time without notice; [and] (d) the right to have Haggard collect for the Star from the person to whom he made deliveries." *Id.* at 731.

Haggard was required to keep subscriber lists, receipts, and account sheets on blank forms furnished by the Star. *Id.* at 732. Additionally, the Star required Haggard to submit a map of his route, his subscriber list, and reports showing the time he delivered to each customer. *Id.*

The *Skidmore* court concluded that the contract "shows that the results sought by the Star were prompt deliveries of the newspapers published daily by it ... [but] clearly and specifically leaves the means and methods for accomplishing results to [Haggard]." *Id.* at 731. Furthermore, the court held that the Star's requirement that Haggard keep receipts and account sheets on forms provided by the Star:

> was neither an assumption of control of Haggard's physical activities, nor a direction concerning his physical conduct in reaching the results for which the Star contracted.... Certainly making investigations and requiring reports to find out whether the contract was being performed could not affect their relationship.

*Id.* at 733.

Additionally, the *Skidmore* court noted that the parties must have considered the work done by Haggard as a distinct and independent business separate from that of the Star because Haggard had to purchase the route. *Id.* at 730. The court noted, "It would certainly be most unusual to commence an employment creating the relation of master and servant by buying another employee's job." *Id.* The court pointed out that the Star had the right to refuse to deal with Haggard, which they noted was not "inconsistent with an independent contractor relationship because 'to obtain the shield of an independent contractor, the owner must select a competent and fit person.'" *Id.*

Although Haggard was allowed to sell his newspapers to his customers at an inflated rate, the *Skidmore* court pointed out that Haggard had more control in this regard than others classified as independent contractors. The *Skidmore* court noted, "Restrictions as to territory and as to selling prices are modern business practices even between manufacturers and merchants dealing in various kinds of products." *Id.* at 731.

As a result of the contract between Haggard and the Star, as well as the routine the

parties followed, the *Skidmore* court held that "the evidence was not sufficient to show an assumption of control of the physical activities of Haggard, so inconsistent with the original relation of independent contractor as to change his status to that of servant or employee." *Id.* at 733.

We find *Skidmore* to be controlling. Carron's duties for Pulitzer mirror those of Haggard in the *Skidmore* case.

Paragraph 1 of the "St. Louis Post Dispatch Home Delivery Service Agreement" (the written contract between Pulitzer and Carron dated May 1, 1991, admitted as evidence at trial) states:

> The Carrier is a self-employed independent contractor and not an employee of the Publisher. The Carrier will have the right to operate the Carrier's business as the Carrier chooses. The Carrier shall hire the Carrier's own employees and shall have the right to engage such other subcontractors as the Carrier may deem necessary or desirable and the Carrier shall exercise the sole and exclusive control and supervision of all said persons.... The Carrier will be responsible for the costs of conducting and operating the Carrier's business, including without limitation the provision of office space, transportation vehicles, equipment, and other supplies, and will comply with all applicable laws. The Publisher is interested only in the results to be obtained by the Carrier as described in this Agreement, and the manner and means to be employed by the Carrier are matters entirely within the authority and discretion of the Carrier over which the Publisher has no authority or jurisdiction.

Additionally, Carron's behavior supports a finding that he was an independent contractor. As a carrier under contract with Pulitzer, Carron was responsible for the prompt delivery of the St. Louis Post Dispatch. For the most part, the method Carron used to accomplish this goal was decided by him. Although Carron was required to deliver the newspapers by a certain time every day, the details of delivery and distribution of the newspaper, as well as collection of money, were within Carron's discretion.

Carron bought his two newspaper routes from a previous carrier for $127,000. Be-
cause it was contracting with a carrier to perform a service, Pulitzer had the right to approve the carrier who purchased the route.

Carron had the right to contract with others to perform the duties he agreed to perform for Pulitzer. He had the right to hire his own employees or to engage other subcontractors. If others were hired, Carron had the sole and exclusive control and supervision over his employees and subcontractors. He was also responsible for the costs of his business and provision of vehicles needed for deliveries.

Under the contract, Carron agreed to hold harmless and indemnify Pulitzer for any claims for injury to any person injured through his acts, omissions, or negligence. Carron also agreed to file his own federal and state tax returns on the basis of his status as an independent contractor and to make all required tax payments and contributions for unemployment insurance on his own.

From the testimony and the documents the trial court had before it, the evidence was not sufficient to show that Pulitzer assumed control of Carron's physical activities to be inconsistent with his classification under the documents as an independent contractor. Carron contracted with Pulitzer to deliver its newspapers, but was neither controlled by Pulitzer nor subject to Pulitzer's control with respect to his physical conduct in the performance of delivering these newspapers. Because there was no right to control, Carron was an independent contractor. Because Pulitzer did not have the right to control Carron's actions, the doctrine of respondeat superior does not apply to hold Pulitzer responsible for Carron's negligence while delivering its newspapers.

Therefore, the trial court did not err in finding that Carron was an independent contractor and in entering judgment notwithstanding the verdict in favor of Pulitzer.

Judgment affirmed.

CRAHAN, P.J., and GRIMM, J., concur.