**TRINITY LUTHERAN CHURCH, Plaintiff/Appellant,**

v.

**Jerry Lee LIPPS and James A. Turnbough d/b/a Highland Timber Company, Defendants/Respondents/ Cross-Appellants.**

**No. ED 79074.**

Missouri Court of Appeals, Eastern District, Southern Division.

Dec. 26, 2001.

Rehearing Denied Feb. 20, 2002.

Benjamin Lewis, Cape Girardeau, MO, for appellant Trinity Lutheran.

Albert C. Lowes, David J. Roth II, Cape Girardeau, for respondent Jerry Lee Lipps.

John L. Oliver, Cape Girardeau, MO, for respondent James A. Turnbough.

MARY R. RUSSELL, Judge.

A church sued for damages when a logger working under an agreement with one of the church's adjacent landowners cut and sold logs from the church's property. We find that the church did not make a submissible case of agency between the logger and the landowner whose timber the logger had agreed to cut, and that the trial court erroneously denied the landowner's motion for directed verdict or for judgment notwithstanding the verdict ("JNOV"). The judgment as to the landowner is reversed and remanded to the trial court with instructions that the trial court grant the landowner's motion for JNOV. The landowner's cross-appeal is dismissed. The remaining appeals are dismissed as moot.

Jerry Lee Lipps ("Landowner") owned wooded land in Cape Girardeau County, and in the fall of 1997 he sought someone who would fell the trees and split the proceeds with him from selling the logs. Landowner's son, Doug Lipps ("Son"), interviewed several loggers and showed them the property. Eventually, Landowner entered into an agreement with James A. Turnbough ("Logger"), doing business as Highland Timber Company. Their oral agreement was that Logger would harvest all trees greater than eighteen inches in diameter, Logger would obtain bidders for the logs, the purchaser would write separate checks to Landowner and Logger for their respective shares, and their shares would be based on the quality of the individual logs.

All the expenses involved in harvesting the logs were borne by Logger. He arranged for other persons to assist him in the process, and he provided all the equipment necessary for cutting and hauling the logs. Any liability or other insurance premiums necessary for the logging effort were paid by him. Additionally, he was charged with soliciting prospective buyers for the logs he had cut.

Prior to his cutting anything on Landowner's property, Son showed Logger the approximate boundaries of the property. One portion of Landowner's property abutted fifteen acres owned by the Trinity Lutheran Church ("Church"), bordering

the Church's property on its southern and western edges.

A forester from the Missouri Department of Conservation testified that property owners customarily mark the boundary lines before cutting timber. Neither the Church nor Landowner had marked the property where the two parcels adjoined. Logger owned a plat book, but never consulted it. Landowner suggested that Logger inquire with Tommy Farrow ("Farrow"), a family member of the previous owners of the property who was familiar with its boundaries, but he never did. When Farrow offered to show Logger the boundaries, Logger told him he already knew the locations. He began cutting the property in April of 1998.

When the Church discovered that its trees had been harvested, it brought suit against Logger and Landowner for the resulting decrease in the value of its property. The Church alleged that Logger and Landowner did not have reasonable cause to believe the trees belonged to them and that Logger was acting as Landowner's agent when he removed the trees from its property. It also claimed that it should receive treble damages and costs pursuant to section 537.340 RSMo 2000.[1] Landowner cross-claimed against Logger alleging that Logger acted unilaterally and improperly in cutting the Church's trees and seeking to recover the entire amount of the judgment plus reasonable attorney's fees.

At trial, both the jury and the judge rendered findings. The trial court denied Landowner's motion for a directed verdict and submitted the issues of damages and agency to the jury. Based on the evidence at trial regarding the number and types of trees and the proceeds received for them, the jury found the Church's damages for the removed timber to be $23,900 against Landowner and $23,900 against Logger.

The trial court determined that the Church was entitled to treble damages, and it was therefore entitled to judgment against Logger for $71,700 and against Landowner for the same amount. The trial court also entered judgment for Landowner on his cross-claim.

After the entry of the judgment, Landowner learned that Logger and the Church had entered into a settlement prior to trial whereby Logger would pay the Church $8,000, regardless of the outcome of the trial. Neither the Church nor Logger informed the court or Landowner about their agreement until after the judgment, although the Church had called Logger as a witness at trial.

Upon learning about the settlement, Landowner moved for a directed verdict or JNOV and, alternatively, for a new trial and to amend the judgment. Landowner asserted that the trial court should grant its motion because the Church failed to show that Logger acted in any capacity other than independent contractor. He also claimed that the Church's and Logger's failure to disclose the agreement to the court prevented the court from determining whether and to what extent its terms should have been disclosed to the jury.

Logger and the Church appeal from the trial court's grant of Landowner's motion for a new trial. Landowner cross-appeals the denial of his motion for a directed verdict and for JNOV. We find that Church did not make a submissible case to establish that a master-servant relationship existed between Logger and Landowner. We find the trial court should have granted Landowner's motion for directed verdict or for JNOV.

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

On appeal, the three parties assert several claims of error. Logger asserts the trial court erred in: (1) finding that Landowner was entitled to indemnity from Logger on the treble damages award; (2) allocating only 60% of the sale proceeds and actual damages to Landowner and charging Logger with 40% of the actual damages because this calculation was based on gross proceeds and did not take into account Logger's net proceeds after he paid the full cost of harvesting the logs; (3) ordering that Landowner was entitled to indemnity from Logger and entering judgment in favor of Landowner on his cross-claim against Logger because Landowner's agent, Son, caused the trespass which resulted in the defendants' liability; and (4) trebling damages and finding that Logger did not have probable cause to believe he was authorized to harvest logs from the area delineated by Son. Logger asserts that the trial court properly granted Landowner's motion for new trial because the Church should have disclosed the settlement to the court.

In its points on appeal, the Church alleges that the trial court erroneously granted Landowner's motion for a new trial for two reasons. First, it claims that Landowner was not prejudiced by the agreement or its non-disclosure. Second, it asserts that there was no duty for the Church or Logger to disclose the agreement.

In his response to the Church's brief, Landowner asserts that the trial court did not err by granting his motion for a new trial based on the non-disclosure of the settlement between the Church and Logger. Landowner claims that the trial court erroneously denied his motion for a directed verdict or JNOV because the evidence was insufficient to establish the applicability of *respondeat superior* to Landowner based on his relationship with Logger.

In his response to Logger's brief, Landowner contends that if the jury correctly found that a master-servant relationship existed between him and Logger, then the trial court properly found that Landowner was entitled to indemnity from Logger as a matter of law because the jury's verdict against Landowner was based solely on its finding of a master-servant relationship between them. Landowner also claims that treble damages were inappropriate in this case because he and Logger had probable cause to believe that Logger was cutting trees from Landowner's land. Additionally, he asserts that the trial court's grant of his motion for a new trial was proper because of the failure of the other parties to disclose their settlement agreement to the court.

In Landowner's cross-appeal, he first claimed that the trial court erroneously denied his motion for a directed verdict and for JNOV because the evidence was insufficient to prove the applicability of *respondeat superior* to him based on Logger's actions. Landowner also alleged that the trial court erroneously denied his comparative fault defense against the Church, that the award of treble damages was inappropriate, and that the trial court's entry of a $71,700 judgment was erroneous because Logger's $8,000 settlement should have been subtracted from the jury award before its award was trebled.

■ We must first determine whether we have jurisdiction to consider Landowner's cross-appeal. The granting of his motion for a new trial erased the judgment against him. Therefore, there is neither a final appealable judgment nor is Landowner an aggrieved party with standing to appeal. *Robbins v. Jewish Hosp.*, 663 S.W.2d 341, 344 (Mo.App.1983); *Mrad v. Mo. Edison Co.*, 649 S.W.2d 936, 941–42

(Mo.App.1983). As a result, we must dismiss Landowner's cross-appeal.

■ Where a plaintiff, however, appeals asserting error by the trial court, the defendant may contest the issue of submissibility of plaintiff's case, an issue inherent in every appeal. *Robbins,* 663 S.W.2d at 344. In addition, the respondent need not file an appeal to raise other grounds asserted in the motion for a new trial. A respondent may seek to justify the granting of a new trial motion on other grounds in the motion not specified by the trial court. *Benscoter v. Williams,* 600 S.W.2d 217, 221 (Mo.App.1980).

We, therefore, have jurisdiction to address Landowner's argument that the trial court erroneously denied his motion for directed verdict or JNOV because the Church failed to demonstrate that *respondeat superior* applied to him. We initially address that argument because it is dispositive of the parties' issues on appeal. Landowner argued that the trial court should have granted his motion because the Church's evidence was insufficient to prove that the *respondeat superior* doctrine applied to him based on Logger's actions.

■ When reviewing the denial of a motion for directed verdict or JNOV, "we view the evidence and reasonable inferences therefrom in the light most favorable to the verdict." *Bari v. Lindell Trust Co.,* 996 S.W.2d 655, 658 (Mo.App.1999). When the grant or denial of a directed verdict or a JNOV is based upon a matter of law, however, we review the trial court's decision *de novo. See Kinetic Energy Dev. Corp. v. Trigen Energy Corp.,* 22 S.W.3d 691, 697 (Mo.App.1999). Although generally whether *respondeat superior* applies is a question of fact for the jury, when the facts are undisputed, as in this case, and can result in only one reasonable conclusion, the matter is a question of law.

*Willamson v. Southwestern Bell Tel. Co.,* 265 S.W.2d 354, 359 (Mo.1954); *Weinbauer v. Berberich,* 610 S.W.2d 674, 677 (Mo.App. 1980). Therefore, our standard of review in this instance is *de novo. See Hougland v. Pulitzer Pub. Co.,* 939 S.W.2d 31, 33 (Mo.App.1997).

■ At trial, the Church's theory of recovery as to Landowner was based on the doctrine of *respondeat superior,* which is derived from the principle that the master, or the employer, controls the actions of the servants, or employees, and that the servants' actions are thereby imputed to the master. *Weinbauer,* 610 S.W.2d at 677. *Respondeat superior* is inapplicable unless a master-servant relationship exists between the parties. *Hougland,* 939 S.W.2d at 33. If the doctrine applies, then the employer is liable for damages resulting from the employee's negligent acts committed within the course of his or her employment. *Id.*

■ Whether *respondeat superior* operates to impose liability is determined by evaluating whether the "person sought to be charged as master had the right or power to control and direct the physical conduct of the other while working." *Id.* Without the right to control, no master-servant relationship exists and the purported master incurs no liability. *Id.*

■ In contrast to performing tasks as an employee within a master-servant relationship, an independent contractor exercises independent judgment and " 'contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work.' " *Talley v. Bowen Constr. Co.,* 340 S.W.2d 701 (Mo.1960) (*quoting Rutherford v. Tobin Quarries,* 336 Mo. 1171, 82 S.W.2d 918, 920 (1935)).

Evaluating whether someone's status is more properly categorized as servant or independent contractor involves surveying the various circumstances of the parties' association. *Id.* We look to the cases of *Schroer v. Brooks,* 204 Mo.App. 567, 224 S.W. 53 (1920), and *Williamson v. Southwestern Bell Tel. Co.,* 265 S.W.2d 354 (Mo.1954), for instruction.

In *Schroer v. Brooks,* both parties owned adjacent properties, and Brooks engaged a logger to cut timber on his land. 224 S.W. at 55. Schroer sued Brooks for damages resulting from trespass upon a roadway. *Id.* at 54. Brooks and the logger agreed that Brooks would pay him per every hundred feet of logs that he cut, and he could use his judgment to determine where to cut. *Id.* The logger hired and paid workers to help in clearing and cutting the property. *Id.* The only instruction by Brooks was for the logger to cut trees that would make good saw logs. *Id.* The dispute between Schroer and Brooks arose when some of the trees felled by the logger and his crew blocked Schroer's roadway. *Id.*

The relevant issue in *Schroer* was whether the logger was an independent contractor, in which case Brooks would not be liable for the trespass, or whether the logger and Schroer had a master-servant relationship, in which case liability for the logger's actions would be imputed to Brooks. *Id.* at 55. Upon a review of the particulars of their association, the court found that the logger was an independent contractor. *Id.*

In reaching its conclusion, the court focused on several factors. *Id.* The logger determined the hours he worked, paid for his own tools and decided when to use them, decided which trees to cut, hired and paid for his helpers, and received no instructions from Brooks. *Id.* at 55–56. Additionally, the logger's pay was a direct result of the number of logs cut, and he independently determined that quantity. *Id.* at 56–57. The court also noted that if Brooks had wished to cease the cutting of the logs, he would not have fired the logger, rather he would have terminated their contract, which either party could have done at any time. *Id.* at 57.

Similarly, in *Williamson,* the telephone company's liability depended upon whether a master-servant relationship obtained between it and the tree trimmer. 265 S.W.2d at 356–57. The plaintiff in *Williamson* sought damages after being injured in an automobile accident with one of the tree trimmer's vehicles. *Id.* at 355. Although the parties had a detailed written contract, when the court focused on the contract "in its essence and entirety," it determined that the nature of their actions established the tree trimmer as an independent contractor and not an employee of the phone company. *Id.* at 359.

The plaintiff argued that the provisions of their contract indicated that the telephone company retained control over the tree trimmer's operations and that, as a result, the negligent actions of the tree trimmer or his employees should be imputed to the telephone company. *Id.* at 356–57, 358. The plaintiff argued that a provision requiring the tree trimmer to dispose of the timber in a manner established by the telephone company and another clause requiring the tree trimmer to cut and prune in accordance with the company's methods demonstrated that he was under the phone company's control. *Id.* at 358. Additionally, the plaintiff claimed that because the telephone company provided blueprints establishing the areas to be trimmed, it retained control. *Id.*

However, the bulk of the facts indicated that the tree trimmer maintained the status of an independent contractor. He had submitted a bid for the work, was awarded

the contract, and was to be paid by the job. *Id.* at 356. He furnished "all labor, tools, equipment, vehicles, and supervision required" to complete the task. *Id.* He was required to provide his own liability insurance with specified policy amounts and agreed to indemnify the telephone company for any property damage or other damages as a result of his neglect. *Id.* His profession was that of tree trimming, and he specialized in work for public utilities. *Id.* He hired his own help, furnished them with the necessary tools, and designated several foremen to lead his several crews. *Id.*

In response to the plaintiff's arguments that the phone company maintained control over the tree trimmer, the court observed that the definition of independent contractor includes the allowance of some measure of control over the contractor's work, as long as it is limited to securing proper performance of the work. *Id.* at 358. The court noted the contract did not reserve control or supervisory rights over the tree trimmer or his employees and that efforts to coordinate the timing of the work performed by the phone company and the tree trimmer's crew did not indicate any right of the phone company to intervene in the relationship between the tree trimmer and any members of his crew. *Id.* at 358–59.

In addition to *Schroer* and *Williamson,* the Restatement (Second) of Agency, section 220(2) (1958) controls our determination in this case. The Restatement establishes several factors for evaluating whether one acts as servant or an independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; (j) whether the principal is or is not in business.

*Keller v. Mo. Baptist Hosp. of Sullivan,* 800 S.W.2d 35, 38 (Mo.App.1990).

In reviewing the case at hand with respect to these factors, we find the facts can lead only to the conclusion that Logger was an independent contractor. Logger controlled the details of the tree trimming, he was a tree trimmer by trade, and his testimony indicated that other tree trimmers in the area had been interviewed before he was chosen to enter into the tree-harvesting agreement with Landowner. Logger supplied the equipment and the laborers for the tree trimming, which naturally occurred in the woods. The agreement reached by Logger and Landowner endured only as long as it took Logger to cut all the trees larger than eighteen inches in diameter from Landowner's property, and Logger determined the rate at which his crew worked, even though Landowner once suggested that they should work faster. Landowner was not in the business of tree trimming, and he told Son to seek out tree trimmers to accomplish the clearing of his property. There is no indication that either party intended to establish any type of working relationship with the exception that they

received separate checks from the log sales, and Logger bore all the costs of production. Landowner's sole duties were that he owned the land and he collected money from the sale of the trees from that property.

The similarities among the present case and *Schroer* and *Williamson* instruct our decision that no reasonable conclusion exists but that Logger was an independent contractor and that no master-servant relationship existed between him and Landowner. We therefore reverse the trial court's denial of Landowner's motion for directed verdict or JNOV on this point.

The remaining issues by the parties are now moot, and we do not discuss them. A new trial is not necessary to determine the agency issue as the facts were not in dispute. As a result of our finding that no agency existed, Landowner cannot be liable for Logger's actions in trimming trees from the Church's property. This also makes Landowner's cross-claim against Logger moot. Further, the settlement between the Church and Logger renders irrelevant Logger's concerns with the valuation of the damages to the Church's property.

The judgment as to Landowner is reversed and remanded to the trial court with instructions that the trial court grant Landowner's motion for JNOV. The Landowner's cross-appeal is dismissed. The remaining appeals are dismissed as moot.

JAMES R. DOWD, C.J., and LAWRENCE G. CRAHAN, J., concur.