ROBERT E. DAVENPORT, JR., by His Next Friend, v. KING ELECTRIC COMPANY, Appellant.

Division One, March 29, 1912.

1. WITNESS: Child: Understanding Obligations of Oath: Voir Dire. After plaintiff, between ten and eleven years old, had begun his testimony, and when it appeared that he did not remember his birthday, his father was called to fix that date. When the plaintiff resumed the stand the defendant wished to examine him as to his understanding of the obligation of an oath. The court refused to allow such questions at the time, but indicated that they might be asked later. *Held*, that, since nothing had transpired which tended to show that the plaintiff lacked knowledge of the obligations of an oath, the trial court's refusal was not error.

2. ———: ———: Over Five Years of Age and Under Nine: Voir Dire. Children ranging from five to nine years may be admitted as witnesses if it appears upon their preliminary examinations that they have sufficient intelligence to understand the questions put to them and are not otherwise incompetent. Correct practice demands that this preliminary examination be held before the witness is sworn and admitted to testify.

3. **NEGLIGENCE:** Electric Wire: Evidence: Reasonable Infer-
ence by Jury. In finding that the wire which caused plain-
tiff's injury belonged to the defendant electrical company, the
jury were at liberty to draw reasonable inferences from the
evidence showing that the vicinity was supplied with electricity
by the defendant; that it was engaged in changing poles at
the particular spot; that it had been at work there the evening
before, and that its men removed the wire which caused plain-
tiff's hurt.

4. **PROOF:** Facts Peculiarly in Knowledge of Defendant. Slight
circumstances are sufficient to establish a fact where the de-
fendant is peculiarly possessed with power to disprove it and
fails to adduce such evidence.

5. **NEGLIGENCE:** Electric Wire: Judicial Notice: Law of
Science: Demurrer to Evidence. To sustain plaintiff's con-
tention of defendant's negligence, there was testimony that the
wire which caused plaintiff's injury was broken and suspended
over the street and dropping sparks, five hours before the
injury, the end hanging, witness thought, about eighteen inches
above the ground. The defendant insists that the court should,
of its own knowledge, hold this testimony incredible, because
the wire, so defendant says, carried a current of two thousand
volts, which, according to the known laws of electricity, was
insufficient to transmit the current through the eighteen inches
from the end of the wire to the ground. *Held*, that there is
no reason for holding as defendant wishes, for even if that
electrical law were established, its application in this case
would depend upon two questions of fact upon which there was
no testimony the jury were bound to believe, namely, the exact
voltage of the current, and the distance from the end of the
wire to the ground. The trial court did not, therefore, err
in refusing to sustain a demurrer to the evidence.

6. **NEGLIGENCE:** Electric Wire: Highest Degree of Care. The
highest degree of care is required of one who maintains electric-
ally charged wires. The general use of these appliances on
the public streets and highways makes it the duty of the owner
to exercise a degree of care commensurate with the proper
protection of the public.

7. ————: ————: Specific Negligence. The charge in a peti-
tion of negligent maintenance of a dangerous electrical wire,
does not bring the case within the rule that when specific acts
of negligence are pleaded, the particular negligence averred
must be proved.

8. **VERDICT:** Excessive. Where the plaintiff, a child between
seven and eight years old, was severely injured and his arm

permanently deformed by reason of the negligent maintenance by defendant of a charged electric wire, a judgment for $9000 is held to be excessive to the amount of $1500.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED (*conditionally*).

*Kinealy & Kinealy* for appellant.

(1)   The court ruled that the competency of plaintiff to testify was a question of fact for the jury and to be inquired into on cross-examination of him after he stated the facts of his injury to the jury. This was error. State v. Brown, 209 Mo. 418; State v. Doyle, 107 Mo. 36. (2) When plaintiff was sworn, the court ruled he was competent to testify because over ten years old and would not permit defendant to examine him or examine him himself to show his incompetency. This was error. Brashear v. Tel. Co., 45 Mo. App. 433; 1 Greenleaf on Ev., sec. 367, p. 505; 7 Ency. of Ev., p. 272; Elliott on Ev., sec. 767, p. 85; 1 Rice on Ev., p. 539; State v. Doyle, 107 Mo. 42; McKelton v. State, 88 Ala. 181; State v. Nelson, 132 Mo. 184; Cadmus v. St. Louis B. Co., 15 Mo. App. 286. (3) Defendant was entitled to an examination of plaintiff (who was over ten years old) when he offered himself as a witness to ascertain if he possessed the requisite mental qualifications to testify. State v. Brown, 209 Mo. 418. (4) Defendant's instruction in the nature of a demurrer to the evidence should have been given. Strack v. Tel. Co., 216 Mo. 601; Luehrman v. Gas Co., 127 Mo. App. 213. (5) Plaintiff can only recover because of the specific. acts of negligence charged to have been committed by defendant and which have been established by the evidence and entitle him to recover, if any such there be. Wald-

242 Sup.—8

hier v. Railroad, 71 Mo. 514; Price v. Railroad, 72 Mo. 414; Ely v. Railroad, 77 Mo. 34; Bunyan v. Railroad, 127 Mo. 12; Bartley v. Railroad, 148 Mo. 124; Feary v. Railroad, 162 Mo. 75; Hamilton v. Railroad, 112 Mo. App. 509; McGrath v. Railroad, 197 Mo. 105; Orcutt v. Bldg. Co., 201 Mo. 424.

*Amos R. Taylor* and *Howard Taylor* for respondent.

(1) The evidence produced by the plaintiff tended to prove every material allegation of the petition. Therefore, the case was one to be submitted to the jury—if the petition stated a cause of action. (2) The plaintiff, being over ten years of age at the time that he was sworn as a witness in the case, was a competent witness. R. S. 1909, sec. 6362; State v. Scanlan, 58 Mo. 205; State v. Jefferson, 77 Mo. 138; State v. Doyle, 107 Mo. 42; State v. Nelson, 132 Mo. 198; State v. Prather, 136 Mo. 25; State v. Brown, 209 Mo. 419; State v. Jeffries, 210 Mo. 326. (3) There was no demand made or offer to show that the plaintiff was peculiarly incompetent or that he was an idiot or lunatic or did not possess the usual intelligence of a boy of his age. The court granted defendant leave to ask questions to show this, which defendant did not accept. The court stated its position on the question to be: "Yet I think the law fixes the age at ten as one when a person may testify in the absence of some proof" of incompetency. The court made this ruling after having seen the appearance of the witness, noted his manner and intelligence, whilst giving his evidence before any objection was made. The court being thus satisfied of the competency of the witness, there was no abuse of its discretion in permitting the witness to testify, even if a proper objection had been made at the proper time. The trial court may, from the appearance, manner and intelligence of the witness, either

before or after he has been sworn to determine his competency. State v. Scanlan, 58 Mo. 205; State v. Jefferson, 77 Mo. 138; State v. Doyle, 107 Mo. 42; State v. Brown, 209 Mo. 418; State v. Jeffries, 210 Mo. 326. (4) If the fact that the witness was clearly competent is demonstrated by the evidence given, the court could not do the injustice of condemning the act of the trial judge that resulted in putting before the jury fair, competent and material evidence, even if the trial court made a mistake in not allowing defendant's counsel to investigate the competency of the plaintiff, after he had been sworn and begun his testimony without objection. And the ominous failure of appellant when it had full time and opportunity, by cross-examination, to avail itself of the privilege of showing the incompetency of the plaintiff, is an eloquent answer to its claim of injury or prejudice by the court's action. The contention of appellant is a grasp at a shadow at the sacrifice of the substance of this matter. The evidence showing the competency of the witness, the attendant error of the court if there was such, was harmless. The court was found right on the trial test, and in the face of the record of plaintiff's evidence, we think the court did entirely right in exercising its discretion in permitting the plaintiff to testify as a witness. R. S. 1909, sec. 2082; Schuepbach v. Gas Co., 232 Mo. 611. (5) Appellant's contention that a demurrer to the evidence should have been sustained is not tenable under the evidence in this case. The proof being that the appellant was maintaining the dangerous agency of electricity in a public highway, it was bound to exercise the highest practical care to prevent its escape and injury to a person on the highway, where he has a right to be. And the fact that this plaintiff, whilst lawfully using the highway, was without fault on his part injured by defendant's electric fluid escaping from the wire down on the street,

is "conclusive proof of the defect of the insulation and negligence of the defendant;" and the plaintiff being free from negligence, the defendant is liable according to the well settled rule of decision in this and other states.   Geisman v. Electric Co., 173 Mo. 678; Young v. Oil Co., 185 Mo. 665; Ryan v. Transit Co., 190 Mo. 634; Von Trebra v. Gaslight Co., 209 Mo. 658; Clark v. Railroad, 234 Mo. 423.  (6) The case was fairly tried and the verdict is not excessive. The boy from youth to manhood, according to the uncontested evidence, must either carry through life a dead, deformed and useless hand and forearm, or, what the doctors say is the better alternative, have his arm amputated.   Nine thousand dollars is not too much as compensation for such injury according to the rules of decision in this State. This was the boy's right hand, drawn and doubled so as to make it useless and deformed and necessitate its amputation as the best relief for him. Who can fix a fairer measure of compensation than twelve fathers or brothers who sit in a jury box, free from undue influence? There is no evidence of passion or prejudice in such a verdict, though appellant complains of its hardship as due to the fact that it is a small corporation.  We have no evidence in the record as to its size, but we are content to believe that a corporation supplying the large community with electricity, as disclosed by the evidence of defendant it did, is not so small a concern that it should invoke a different rule than the facts warrant.

BOND, C.—Plaintiff, then between seven and eight years of age, was injured on the 2d of September, 1905, while using a street, by coming in contact with an electrically charged wire which was broken and hanging over the street about eighteen inches above the curb and which touched one of plaintiff's hands, causing him to be severely injured and a per-

manent deformity of the arm. Plaintiff sued by his next friend on the 18th of November, 1905. Defendant answered by general denial and plea of contributory negligence. The trial was had on the 14th of May, 1908.

Plaintiff testified that he was then ten years of age; that he was seven when he was injured, three years before; that he did not know his birthday. He was temporarily withdrawn and his father was put upon the stand, who testified that plaintiff would be eleven years old on the 24th of December, 1908. Plaintiff was then recalled. Whereupon defendant asked leave to examine the witness to ascertain if he "understood the obligation of an oath." The court upon objection of plaintiff's counsel declined to permit that examination to be gone into at the time, but indicated defendant might ask questions afterwards.

The examination of plaintiff was then continued in chief, after which he was cross-examined but no questions were put to him touching his knowledge of the obligation of an oath. While being cross-examined, he testified in substance that his father was a motorman; that he was sent to the bakery to get bread for breakfast about seven a. m.; that in the course of his trip he came to a place where "building was going on there and they were just digging the foundation and these pieces of plank were there to walk over. There was no sidewalk—just dirt. I walked along the sidewalk until I got to that place, and I jumped for the board and it slid, and my hand went up and touched that wire. These boards were between the house line and the curb line. I was about two feet from the curb on the inside when I slid. I saw this wire hanging down and it was about two or three inches inside of the curb, and there were two telegraph poles there, and the wire was hanging down along the side of the pole inside of the curb about two or

three inches. I jumped from one board to the other to keep out of the mud. I did not get hold of the wire but my hand came in contact with it to push it out of my way. The wire was on the second pole I came to. I did not touch the poles." When the witness received the electric shock he became unconscious and was taken to a neighboring drug store, where, he says, "he came to," and thence was taken home and treated by two physicians, whose testimony tends to show that it would be better for him if his arm were amputated.

The father of plaintiff testified: "I was at home the day my boy got hurt, as that was my day off. He left home to go to the bakery about seven o'clock. I got to the place where the boy was hurt about five minutes afterwards, I guess. A lady came to me and told me the boy was at the drugstore and I started for there. I saw two poles near there. That exact pole and an old pole which had not been taken down; there seemed to be a change of wires on these poles. They were taking down the old poles and new ones were being put up at this place and further down I saw the wire hanging there and don't remember much about it, as I was very much excited. It was hanging about eighteen inches from the pole and looked to me probably eighteen inches or a foot from the ground. It was an insulated wire. An electric current for electric lights was carried on it. The King Electric Company has light wires out there. Before I left the drug store with the boy I telephoned for the doctor and then took the boy home. About an hour afterwards I saw the wire again, and the King electric light men were there with their wagon taking it up. That name was on the wagon."

A letter carrier also testified for plaintiff that in the afternoon of the day before plaintiff was hurt, he saw defendant's wagon and a gang of men working there, bossed by a young man then in the court room.

Adding, "I was on the opposite side of the street delivering mail going west and probably got diagonally across to where this electric light was when I heard a holler and a shout and saw the boy fall down and a lady ran out of the real estate office and a man out of the drugstore. . . . The boy fell on the dirty sidewalk just about where the wire was hanging. The wire hung over the sidewalk about a foot, I should judge, from the curb."

Other witnesses for plaintiff testified that the injury happened as stated above; that the night before it stormed and rained but cleared about five o'clock a. m. One witness stated he saw this wire emit sparks at two a. m., and that the accident happened about seven-thirty or eight; that the wire causing the injury was an insulated one, such as is used to carry electric currents; and that defendant furnished electricity in that part of the city.

The evidence of the defendant is not material to the scope of review arising on the questions presented on this appeal. Plaintiff had judgment for $9000, from which defendant duly perfected its appeal.

## OPINION.

I. It is insisted for defendant that the refusal of the court to cause a *voir dire* examination of the plaintiff upon the request of defendant, made after plaintiff had been sworn as a witness and had proceeded to testify until he stated in answer to a question that he did not remember his birthday, was reversible error.

This point is untenable, unless it can be shown that the trial court abused its discretion or misconceived the law in this matter. [2 Rice on Evidence, n. 289 *et seq.;* State v. Scanlan, 58 Mo. l. c. 205; State v. Jefferson, 77 Mo. l. c. 138; State v. Doyle, 107 Mo. l. c. 42; State v. Nelson, 132 Mo. 184; State v. Brown, 209 Mo. l. c. 419; State v. Jeffries, 210 Mo. 326.]

The statute in disqualifying certain persons to testify, among others, specifies, "a child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." [R. S. 1909, sec. 6362.] This statute has been applied in the foregoing citations, where it has been uniformly ruled that children ranging from five to nine years may be admitted as witnesses if it appears upon their preliminary examinations that they have sufficient intelligence to understand the questions put to them and are not otherwise incompetent. In all of those cases the examination of the witness either by the court's initiative or upon the request of the adverse party, was had before the witness was sworn and admitted to testify. This is the correct practice, for the object of such an inquiry is to determine the personal competency of a person proposed as a witness; hence, the demand therefor should be made before the witness has been sworn or admitted to testify.

In the case at bar no objection was made when the plaintiff was sworn as a witness, nor to the giving of his testimony until he had been recalled after the temporary interrogation of his father showed the date of his birth. The witness had stated that he was ten years old and had been injured three years before, when he was seven years old, before any objection to his further testimony was made by defendant. The request then made was not that the witness should be examined as to his statutory disqualification (incapacity to understand the questions or to answer them truly) but as to his comprehension of the obligations of an oath. If the latter disqualification existed, then the witness was incompetent under the common law regardless of his age. Nothing had transpired up to the time this request was made which tended even by inference to show that the witness on the stand had no knowledge

of the obligations of an oath or was deficient in moral training. Hence there was no excuse for this untimely request, made by defendant. The record shows that the trial judge distinctly stated that he simply denied the right to go into the inquiry at that time, but would not prohibit questions by the defendant afterwards. The witness was afterwards fully cross-examined, but no questions were put as to his knowledge of the nature and obligations of an oath or tending to elicit any answers on that point. We have set out much of the testimony of this witness while being cross-examined by the defendant, and it is only fair to say that it leaves the impression of an ingenuous and graphic narration of facts and affords no intimation that the witness, then between ten and eleven years of age, was insensible to the sanctions of an oath or deficient in the measure of intelligence common to boys of that age. We rule the point under review against defendant.

II. Defendant insists that the peremptory instruction to find in its favor should have been given at the close of plaintiff's case. In support of this view, it is argued by defendant that there was no evidence that the wire causing plaintiff's injury belonged to the King Electric Company, but this contention overlooks the reasonable inferences which the jury were at liberty to draw from the statements of the witnesses, showing that this part of the city was supplied with electricity by defendant; that it was engaged at the spot where plaintiff was injured in changing poles; that it had been at work there on the evening before, and that its men and representatives removed the very wire which caused plaintiff's hurt. If any real doubt existed on that subject, the disproof of ownership was peculiarly within the power of the defendant. No attempt whatever was made to show that it did not

own these insulated wires or was not engaged in light-ing this territory. Slight circumstances are sufficient to establish a fact where the defendant is peculiarly possessed with power to disprove it and fails to ad-duce such evidence. We think there was ample evi-dence in the record in this case to warrant the infer-ence that defendant owned the wire causing the injury.

III. Defendant next insists that there was no credible evidence tending to prove its negligent main-tenance of the wire causing the injury, and that for this reason its demurrer to the evidence should have been sustained.

Mrs. Richter's testimony shows that the wire was broken and suspended over the street for the space of five hours before the injury to plaintiff, as she saw it, as early as two o'clock in the morning, dropping sparks of fire; that the rain had ceased at five o'clock; that she thought the end of the hanging wire was about eighteen inches above the ground. Defendant insists that this testimony is incredible, because it says the wire in question carried a current of about two thou-sand volts, and that according to the known laws of electricity, this voltage was insufficient to transmit the current from the end of the wire through an air space of eighteen inches to the ground. Defendant asks the court to affirm this law as of its judicial knowledge.

If this theory of the defendant could be scientifi-cally established as one of the laws of electricity, and therefore proper to be declared as within the judicial knowledge of the court, still there is no reason why that should be done in the present case, for its appli-cation at all would depend upon two questions of fact. First, the exact voltage of the electrical current car-ried by the wire; and, second, the distance of the end of the wire above the soil. There was no testimony

on either of these subjects which the jury were bound to believe to be true. They might have disbelieved the evidence relating to the amount of the electrical current, and they might have disbelieved the testimony touching the distance between the end of the wire and the ground. On the other hand, the jury had the right to believe the evidence of Mrs. Richter, that electrical sparks were being emitted by this wire at two o'clock in the morning, and to find from that fact that the end of the wire was close enough to the earth to permit of this sparking in accordance with the laws of electricity. As the credibility of this witness's testimony was a matter for the jury to determine, and as the record shows there was ground upon which it could be believed without contravening the electrical principle assumed by defendant, we cannot hold that there was no basis for the finding in this case that the dangerous condition of the wire had existed for a sufficient length of time to charge defendant with its negligent maintenance. We, therefore, rule that the trial court did not err in refusing to take the case from the jury on the theory that the testimony of Mrs. Richter was incredible.

There was ample proof in the record for the finding by the jury that the defendant owned the electrical wires causing plaintiff's injury, and that he met with the mishap where he had a right to be and without fault on his part. The law on this subject has been announced after the most careful consideration in a number of recent decisions, to the effect that it is the duty of the owner of that dangerous agency to exercise the highest degree of care in maintaining electrically charged wires. The general use of these appliances on the streets and highways which the public are compelled to use at all times, makes it the duty of the owner to exercise a degree of care commensurate with the proper protection of the public. [Geismann

v. Mo. Edison Elec. Co., 173 Mo. 1. c. 674; Young v. Waters-Pierce Oil Co., 185 Mo. 1. c. 664; Ryan v. St. L. Transit Co., 190 Mo. 1. c. 634; Von Trebra v. Gaslight Co., 209 Mo. 1. c. 659; Clark v. Railroad, 234 Mo. 1. c. 421.]

IV.    The charge in the petition in this case is negligent maintenance of a dangerous electrical wire. This does not bring it within the purview of those decisions where it is ruled that when specific acts of negligence are pleaded, it devolves upon plaintiff to prove the particular negligence averred.

The recovery in this case was had upon the theory that the broken wire had been in that condition, and dangerously charged with electricity, for a sufficient length of time to make its existence at the time plaintiff was hurt an act of negligent maintenance on the part of the defendant. There was testimony inferably proving these facts. The recovery was had on that theory alone, and not for some different or other unpleaded negligence. The instructions in this case submitted this issue properly. Nor are they open to the objection of assuming facts in dispute. Nor can we find any evidence that the court by refusing other instructions than those it gave for defendant excluded from the jury any issue proper for their consideration. The result is that the judgment herein is affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BOND, C., is adopted as the opinion of the court. All the judges concur, as *per curiam* opinion filed herewith.

PER CURIAM.—The court concurs in the reasoning of our learned commissioner as expressed in his opinion, and to that extent adopts his opinion as the opinion of the court. We are however of the opinion

that the verdict and judgment in this case are excessive, and for that reason the judgment should not be affirmed except upon a remittitur being entered in the sum of $1500, so as to leave such judgment in the sum of $7500. If therefore the plaintiff will within ten days enter a remittitur in the sum of $1500, as and of the date of the judgment in this cause, then said judgment so reduced to $7500 will be affirmed in that sum as and of the date of its original entry.

If however plaintiff refuses to file such remittitur within said ten days, then this judgment shall be reversed and the cause remanded. To this extent the opinion of our commissioner is modified and as thus modified is adopted as the opinion of the court. All the judges concur.