Gladys TALLEY, Appellant,

v.

BOWEN CONSTRUCTION COMPANY, Respondent.

No. 48100.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Rehearing Denied Dec. 12, 1960.

Robert B. Wurdack and Commodore Mc-Farland Combs, Jr., Combs & Denney, Kansas City, for appellant.

Gene C. Morris, Reed O. Gentry, Kansas City, for respondent, Bowen Const. Co.; Rogers, Field, Gentry & Jackson, Kansas City, of counsel.

EAGER, Judge.

This action is one for damages for personal injuries sustained on September 25, 1957, when a truck collided with a car in which plaintiff was a passenger. The truck was driven by one George Figous, but was owned by P. O. White. The sole question brought here is whether Figous was at the time acting as an agent and employee of Bowen Construction Company, the respondent. The trial court directed a verdict for it and the jury found for Figous, the other defendant. Plaintiff's motion for a new trial as to Figous was sustained on the ground that the verdict for him was against the weight of the evidence. Plaintiff then dismissed without prejudice as to Figous, and appealed from the remaining judgment which had been directed for Bowen Construction Company. The appeal is here on a partial and agreed transcript.

Bowen Construction Company (hereafter referred to as Bowen), is a Missouri corporation; at the time in question it had a plant at 32nd and Fairmount in Kansas City, Missouri. Apparently it was in the paving business, but in any event it prepared and sent out in trucks from that plant hot asphalt for use on paving jobs. It seems to be conceded that Figous, returning to this plant after delivering a load of asphalt to a paving job at Truman Corners (Highway 71 and Blue Ridge Road) and traveling west on 31st Street, turned left into Fairmount in front of the car traveling east on 31st Street in which plaintiff was riding. His negligence in so doing was both asserted and disputed. It was also conceded that the truck in question was owned by White who had made arrangements with Bowen for its use by Bowen, to the extent hereinafter related, on a ton-mileage basis; that White was paid for such use by Bowen and, after deducting the expenses, he split the balance with Figous, the driver. White was a regular driver of one of the company-owned trucks, but for this he was paid by entirely separate checks.

Plaintiff produced as her witness, Clemence J. Wulff, who was and had been for some years the truck dispatcher and phone-radio operator of Bowen. From his uncontradicted evidence the following facts appeared. Bowen, at the time, employed 7–9 regular drivers of company-owned trucks. These men were paid wages on an hourly basis, their work was supervised, their hours were regulated, and they made as many trips in a day as they could. White was one of these. When the volume of work required it, Bowen also used the services of extra trucks and drivers, as stated subsequently. Wulff weighed out the loads on all the trucks at the scales, and gave all the drivers tickets showing the type of material, its weight, the name of the driver, and the name and address of the consignee. He wrote these tickets himself. Those given to the extra drivers were prepared in three duplicate copies; two were delivered to "the fellow at the other end," and one was retained as evidence for payment. Wulff did not hire regular drivers; he kept himself informed each day as to the immediate needs for material, and he could and did give loads to extra drivers when necessary. These men simply came to the yard in their trucks and waited in line to see if they could get a load. If he had nothing for them he told them so, but he sometimes told them they could "stick around" if they wanted to, that there might be something later; that in such event the driver might stay awhile or leave. If Wulff had a load of asphalt for one of these men, the truck would be driven to the hopper operated by company employees, and when loaded there it would be weighed out by Wulff at the scales. Wulff "couldn't say" whether he kept a list of extra drivers, but he did testify that the "oldest men came first," and that, as a general practice, they gave preference to drivers who had hauled before. At that time they were probably using four extra drivers besides Figous. Wulff could refuse a load to any extra driver and he could tell one who was unsatisfactory not to come back, though he had never done the latter. When he gave a load to an extra driver the arrangement was merely for

"one particular load," not for a day's work; the driver was not required to come back after he delivered that load, nor was he told to return, and whether he did or not was up to him; if he did return he was merely looking or hoping for another load. The extra drivers could show up or not, as they pleased, they could quit or leave at any time, they had no regular hours and no fixed lunch time; they did not "report" to anyone, at the yard or at the place of delivery, though some employee might show them where to dump the loads. Wulff did not direct the route to be traveled, and the driver could use any route he pleased; if an extra driver did not know the way, Wulff might try to tell him the best route. The extra drivers did not use the company gasoline pumps, nor were their trucks serviced or repaired by company employees or at company expense. Diesel oil was kept available for use on the truck beds to keep the asphalt from sticking, but Wulff testified that the use of this oil was "up to the drivers" themselves. It might be inferred that this oil was generally so used. Figous was given no instructions except the tickets. Bowen kept no time records on these extra trucks or drivers, and its only record of the work done by them consisted of the tickets; the drivers turned in their copies every Thursday for payment. Figous was paid nothing whatever by Bowen, receiving his sole compensation from White, the owner of the truck. The job at Truman Corners required a total of approximately 10,000 tons of asphalt. The asphalt was very hot when put in the trucks, and had to be delivered hot, though it probably would remain in satisfactory condition for about two hours. Wulff knew Figous when he saw him. While the evidence did not specifically so show, there is a reasonable inference that Figous, driving White's truck, had previously done such extra hauling for Bowen; the extent and times of this we do not know.

What we are required to decide here is simply whether a submissible case was made on the question of agency,—i. e., whether Figous was, at the time, an agent and employee of Bowen. This necessarily involves the distinctions between the master and servant relationship and the independent contractor relationship; if, however, Figous was not Bowen's agent and employee, we need not determine precisely *who* was or were the independent contractor or contractors. Figous might, for instance, have been an employee of White, or the two might have been joint independent contractors. In Skidmore v. Haggard et al., 341 Mo. 837, 110 S.W.2d 726, 729, the following definitions were cited and approved: " 'A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. * * * An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.' " And in Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S.W.2d 918, 920, the latter term is authoritatively defined as follows: " * * * 'An "independent contractor" is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work.' Flori v. Dolph (Mo. Sup.) 192 S.W. 949, 950; 14 R.C.L. p. 67, par. 2; Coul v. George B. Peck Dry Goods Co., 326 Mo. 870, 32 S.W.(2d) 758, loc. cit. 759." Sundry elements and circumstances enter into the determination of the actual relationship; ordinarily, no one of these is alone conclusive, and all must be viewed to see whether control, or a right of control, has been retained over the supposed employee's physical conduct and the details of the work. Skidmore, supra; Williamson v. Southwestern Bell Telephone Co., Mo., 265 S.W.2d 354; Miller v. St. Louis Realty & Securities Co., Mo.App., 103 S.W. 2d 510; McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149; State ex rel. Chapman v. Shain et al., 347 Mo.

308, 147 S.W.2d 457. In Chapman, Miller and Skidmore, supra, many of the distinguishing elements are set out. They will not be repeated here, but we shall note the significance of the elements which appear in our case.

■ Perhaps the closest case to ours on the facts is Rutherford v. Tobin Quarries, supra (336 Mo. 1171, 82 S.W.2d 918). There a number of independently owned trucks were hauling defendant's rock from a quarry to barges, and one of the drivers was killed in a collision between trucks. The question at issue was whether he was an employee of the defendant. Some owners drove their own trucks, others hired drivers; they were paid so much a load. Under the terms of written contracts they were purportedly made independent contractors. The designation in such a contract, however, is never controlling if there is evidence to overcome it in fact, and the court looked to the evidence to see if agency was established. Noting that these trucks were in the business of hauling generally for hire, that on this work the drivers chose their own routes and speeds, worked at irregular hours, and that the truck owners had the right to substitute drivers, the court held that the relationships were those of independent contractors. It said, in part, 82 S.W.2d loc. cit. 922: " 'Personal service is a marked characteristic of the relation of master and servant. * * * The right of substitution does not connote personal service; on the contrary, it is indicative of an independent contractual relation.' Coul v. George B. Peck Dry Goods Co., supra." It is also worthy of note that the loading there was done by employees of the defendant, that the drivers could quit when they pleased, that the trucks were required to carry two cubic yards of rock per load, that they could not unload unless defendants' employees were there, that they could lay off when they chose, and that the driver in question (the deceased) had actually hauled 180 loads in a period of approximately one month prior to his injury.

Much is also said in Skidmore v. Haggard et al., 341 Mo. 837, 110 S.W.2d 726, which has some application here. In Williamson v. Southwestern Bell Telephone Co., Mo., 265 S.W.2d 354, an individual operating a tree trimming and brush cutting business, was acting under contract in clearing space for new lines; it further appeared that he was operating under rather specific directions regarding the disposition of the brush and timber and the manner of cutting (with blue prints or plats furnished) and with the right reserved to the Telephone Company to direct the order of working at different locations. This person was held to be an independent contractor. The court said in part, quoting, at loc. cit. 358: " * * 'stipulations which entitle the employer to exercise a certain measure of control over the work, but go no further than to enable him to secure that it shall be properly performed, do not affect the quality of contracts which, apart from those stipulations, would be construed as independent.' Annotation 20 A.L.R. 684, 687. * * * it is necessary 'to "distinguish between authoritative direction and control and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger operation." ' Scherer v. Bryant, 273 Mo. 596, 604, 201 S.W. 900, 902."

The case of State ex rel. Chapman v. Shain et al., 347 Mo. 308, 147 S.W.2d 457, 462, also involved the use of a hired truck or trucks in hauling a farm crop. Space will not permit us to recite the facts present there, but the court held that, aside from other elements so indicating, the fact that the truck owner could choose and substitute drivers did "not connote personal service," but was indicative of an independent contractual relation. Various other elements noted were similar to some of those present in our case.

■ The material testimony here all came from plaintiff's witness Wulff, and it was wholly uncontradicted. In such event, and although we consider the evidence in the light most favorable to plaintiff, it be-

comes the duty of the court to decide the effect of the entire evidence, as a matter of law. McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149; Skidmore v. Haggard et al., 341 Mo. 837, 110 S.W.2d 726; Williamson v. Southwestern Bell Telephone Co., Mo., 265 S.W.2d 354. Generally, one vouches for the credibility of his own witness and, in the absence of contradictory testimony, he is bound by it. Crosby v. St. Louis County Cab Co., Mo.App., 320 S.W.2d 944, 947–948. Certainly a mere asserted disbelief of or doubt regarding some of Wulff's testimony may not create a case for plaintiff, or thus operate as a substitute for affirmative evidence. While counsel assert that the trial court ignored certain of the facts, there is nothing in the record to so indicate, and in any event all the facts relied on are in our record.

■ We have determined that on all the facts no submissible case was made against Bowen on the theory that Figous was its employee. As compelling that result we note the following: White owned and furnished the truck, and paid for all gas, oil and repairs. This arrangement was made between White and Bowen. White furnished his own driver, Figous, and there is a fair inference that he could have substituted any other competent driver had he so chosen. White was paid solely by the ton-mile, by means of checks issued for that specific purpose, and Figous received his entire compensation from White. Figous, with the truck, could seek work when he (or White) pleased, and quit when he pleased; he had no assigned hours, and he did not report in, as such. No record was kept by Bowen of the truck's time. No record was kept of the times when Figous came in or quit. Figous was employed for only one particular load at a time, with no assurance of another, and was given a ticket containing all the needed directions for that load. He (or White) selected his route, his speed, and he controlled all other details; the facts indicate no supervision by Bowen of the details or of Figous's physical conduct. The loading was done by Bowen's employees, Figous not participating in that phase of the general activity. This truck and its driver were free to engage in general hauling or any other work and, since the hauling for Bowen was casual and of a temporary nature, there is a fair inference that they did so. White's operation of the truck (through a driver) may be fairly said to have been a distinct business or "calling." White clearly had the right to control the entire operation of the truck, when used for Bowen or otherwise, except to the extent that it had to be used to accomplish any endeavor or result for which it had once been engaged.

Plaintiff calls our attention to the following: that Figous was returning to the yard when the collision occurred; that Wulff weighed all loads and, through the tickets, directed Figous where to deliver the asphalt; that Figous was bound by these directions; that Wulff had the authority to put on or take off extra drivers, and also the right to refuse a load to any extra driver; that the job at Truman Corners required a total of 10,000 tons of asphalt, and that about four extra drivers besides Figous were hauling; that Figous unloaded the asphalt at its destination under instructions from a Bowen employee; that the truck was owned by a full-time employee of Bowen; that White and Figous might not even see each other during the course of a day; that Wulff knew in advance the amount of material required at a certain place; that there was no evidence of personal supervision by White; that occasionally an extra driver would ride on a trip with a regular driver, while waiting for work (but with no reason stated in the evidence); that Wulff, when necessary, would tell a driver the best route; that such directions as were given by Wulff were given to Figous and not to White; and that Bowen furnished diesel oil for the use of all truckers to keep the asphalt from sticking to the truck beds. To these we might add: that apparently Wulff gave

some preference on extra work to the older drivers; and that apparently Figous had driven this truck previously, to an unexplained extent, on Bowen's work.

We cannot attempt to discuss the effect of each and all of these elements and circumstances individually; we are convinced that the facts here, considered as a whole, clearly show that Figous and the truck were used on a casual and temporary basis merely to accomplish a fixed result, and that they were free from that degree of control and right of control over the details of the work and over their physical conduct which constitutes one an employee; and that there was no substantial evidence to the contrary. The facts which plaintiff notes are not inconsistent with the existence of an independent relationship under the authorities which we have discussed. Plaintiff has cited as her principal reliance the cases of Horn et al. v. Asphalt Products Corp., Mo.App., 131 S.W.2d 871; Gorman v. A. R. Jackson Kansas City Showcase Works Co., Mo.App., 19 S.W.2d 559; and Knudsen v. Kansas City Public Service Co., Mo.App., 141 S.W.2d 252, 257. Every such case necessarily depends upon its own facts, all of which must be considered. In Horn, some of the facts are similar to ours, but there was testimony indicating that the hours of work of the hired drivers were regulated, that they were instructed precisely when they should leave the plant with their first loads and their last loads, and how they should cover their trucks; also, certain of these drivers were paid directly by the defendant rather than by those who were claimed to be independent contractors. In Gorman, the truck and driver in question were hired by the month for regular and continuous work, the driver took all his orders from the defendant, the truck remained at defendant's plant or on deliveries for it during all business hours of the day, and two employees were riding on the truck as helpers at the time of the injury. Thus, there were factual elements in each of those cases which were sufficient to differentiate it materially from our case. In Knudsen, supra, the actual decision of the point in which we are interested consisted merely of a statement that the court concluded "that an issue of fact, * * * is made by the testimony, * * *," without evaluating any features of the evidence. The case is not helpful for our purpose. Plaintiff has cited several cases involving the loaned servant doctrine, "principally" (as counsel say) to buttress the rule that the decisive factor is "control and right of control" over the servant. We have no doubt of this rule, and it would be impracticable to discuss those cases in detail. We are also cited to two cases (Davenport v. King Electric Co., 242 Mo. 111, 145 S.W. 454, and Reddick v. City of Salem, Mo.App., 165 S.W.2d 666) as holding that slight circumstances will establish a fact where such fact is within the peculiar and exclusive knowledge of the defendant. The first case cited contains such a statement, the second does not. In our case there is a clear and necessary conclusion from *all* the testimony that Figous was not Bowen's employee, with no substantial evidence and no reasonable inference to the contrary. In Davenport there was no evidence to impair or contradict the evidence and fair inferences of ownership and maintenance of the wire in question by the defendant. The wholly divergent facts make the principle inapplicable here. We also note that our case never reached the stage where defendant was required to put on *any* evidence, and, under such circumstances, it may not be penalized for not having refuted isolated bits of testimony upon which plaintiff now relies, and which we have held were not inconsistent with the present holding.

We conclude there was insufficient evidence to make a submissible issue on the question of the employment of Figous by Bowen. The court properly directed a verdict for Bowen and the judgment is affirmed.

All concur.