**George M. MADSEN, a Minor, by His Father and Next Friend, George C. Madsen, Respondent.**

v.

**James LAWRENCE, Appellant.**

**No. 49565.**

Supreme Court of Missouri.

Division No. 1.

April 8, 1963.

Ernest H. Fremont, Jr., Thos. J. Conway, Jr., Kansas City, for appellant.

Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

William J. Gilwee, Kansas City, Donald E. Lyons, Kansas City, for respondent.

PAUL VAN OSDOL, Special Commissioner.

September 8, 1959, at approximately twelve o'clock noon, plaintiff George Michael Madsen, then ten years of age, was sitting on the terraced lawn of the Anderson home at the southwest corner of the intersection of 57th and Swope Parkway, in Kansas City, Missouri. George Michael lived with his parents in the Madsen home nearby, and most of the morning he and some young friends had been watching the work of excavating earth from a lot or tract of land of higher elevation lying north of 57th Street and west of Swope Parkway.

The lot or tract of land belonged to James E. Southard and Elmer Tindell, builders, who were planning to build a duplex residence at the site. They had engaged defendant James Lawrence, an excavator, to dig the basement, and Lawrence had called three dump-truck owners, Robert L. Young, Robert Edwards, and Eddie Edwards, to receive the excavated dirt from the excavat-

ing machine at or in the excavation and to haul the dirt away from the excavation and site and to the sites of other Southard-Tindell building projects in the neighborhood.

At about noon, Henry A. Smith, who was driving the dump truck belonging to Eddie Edwards, left the truck parked, headed westwardly and unattended, on the north side of 57th, south of the site of the excavation and a few feet east of and behind a parked service truck belonging to defendant Lawrence. The unattended dump truck suddenly rolled backwardly and downgrade eastwardly and angled southeastwardly on and across 57th and the south curb and sidewalk of that street and partially over on the Anderson lawn striking plaintiff and seriously injuring him.

Plaintiff by next friend instituted this action for $150,000 damages for personal injuries, joining Eddie Edwards, owner of the truck which struck and injured plaintiff; Henry A. Smith, driver of that truck; defendant James Lawrence, the excavator; and James E. Southard and Elmer Tindell. builders, as parties defendant.

Upon trial, and at the close of plaintiff's case, the trial court sustained the motion of defendants Southard and Tindell for a verdict directed in their favor. At the conclusion of all of the evidence, plaintiff voluntarily dismissed, without prejudice, as to defendants Eddie Edwards and Henry A. Smith; and upon submission of plaintiff's case against the remaining defendant, James Lawrence, the jury found and returned a verdict for him and against plaintiff. However, the trial court sustained plaintiff's motion for a new trial on the specified grounds "the verdict is against the evidence" and "the verdict is against the weight of the credible evidence in the case." And defendant has appealed from the new-trial order.

Plaintiff had submitted his case to the jury on the theory that Henry A. Smith, driver of the truck that struck and injured plaintiff, was working under the control or subject to the right of control of defendant Lawrence, and that defendant Lawrence was responsible, as a master, for the conduct of Smith, as a servant, under the doctrine of respondeat superior.

Defendant Lawrence does not herein question the sufficiency of the evidence in supporting the submission of the issues of Smith's causal negligence and plaintiff's injuries, but defendant does challenge the sufficiency of the proof of an employer-employee or master and servant relationship between himself and Smith. Defendant invites our thought that the whole evidence shows that Smith was not his employee, but was the employee of Eddie Edwards (who, defendant suggests, was an independent contractor) or was a co-independent contractor with Eddie or was the employee or servant of Southard and Tindell, the builders.

The theories and contentions of the parties involve distinctions between the master and servant relationship and the relationship of independent contractor.

■ "'A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

■ "'A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or subject to the right of control by the master.

■ "'An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.'" Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 108 S.W.2d 58. See also Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726; Talley v. Bowen Con-

struction Company, Mo.Sup., 340 S.W.2d 701.

■ Sundry factors or circumstances enter into the determination of the actual relationship; ordinarily no one of these is alone conclusive, and all must be viewed to see whether control, or right to control has been exercised and retained over the alleged employee's physical conduct and details of the work. Talley v. Bowen Construction Company, supra, and cases therein cited.

In the Talley case, a case cited and greatly relied upon by defendant, this court comprehensively examined the "whole of the evidence" introduced in the trial of the cause. (See also Skidmore v. Haggard, supra.) And from the whole of the evidence, this court determined as a matter of law that plaintiffs in the Talley and Skidmore cases were not entitled to go to the jury on the ultimate respondeat-superior issue. But the "whole of the evidence" which this court reviewed in those cases was the respective plaintiffs' "own evidence" *and which was wholly uncontradicted.* Defendants in those cases had not introduced any evidence. "In such event, and although we consider the evidence in the light most favorable to plaintiff, it becomes the duty of the court to decide the effect of the entire evidence, as a matter of law." Talley case, supra; Skidmore case, supra.

In his brief filed herein defendant in our case, having stated and argued the effect of the entire evidence (the effect of the evidence introduced by plaintiff *and* the effect of the evidence introduced by several defendants, including the evidence introduced by defendant Lawrence), would have us say, "Since the plaintiff under all the evidence is not entitled to recover, the action of the trial court in granting him a new trial is error."

But in this case we shall not consider the evidence from the whole of those standpoints.

■ It was within the trial court's discretion to grant a new trial on the ground the verdict of the jury was against the weight of the evidence. However, such discretion was to be judicially, not arbitrarily exercised. It has been said that, in determining the question whether the trial court (in granting a new trial to plaintiff on the ground the verdict was against the weight of the evidence) was acting in the exercise of its judicial discretion, the appellate court will endeavor to ascertain if there was sufficient substantial evidence to sustain a verdict for plaintiff, the party to whom the new trial was granted. Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, and cases therein cited; Dawson v. Scherff, Mo.Sup., 281 S.W.2d 825; Hendershot v. Minich, Mo.Sup., 297 S.W.2d 403. And in endeavoring to so ascertain we, in the instant case, shall consider the evidence in a light most favorable to plaintiff and give him the benefit of all favorable inferences reasonably to be drawn from all the evidence and disregard defendant's evidence unless it aids plaintiff's case. Kiburz v. Loc-Wood Boat & Motors, Inc., Mo.Sup., 356 S.W.2d 882.

In supporting his claim, plaintiff in part relied upon admissions made in testimony, by deposition, of defendant Lawrence.

Defendant Lawrence testified (by deposition, portions of which were introduced by plaintiff) that he is in the excavating and grading business—such as digging basements, moving dirt, cutting down lots, and so forth. He owns excavating and dirt-moving machinery, including a 955 hi-loader and a service truck; but he doesn't own any dump trucks to receive dirt from his digging machines and to haul the dirt out of and away from excavations.

As to the dirt excavated—"If it is surplus dirt, we do move it out. Q. And how do you get hold of the equipment to haul the dirt out? A. You mean the trucks? Q. The trucks? A. We call them."

A few days before September 8th defendant Lawrence was engaged by Southard

and Tindell to excavate the basement at 57th and Swope Parkway. This was a contract, but not a written contract.

There was dirt on this excavation job that defendant Lawrence had to dispose of. Southard and Tindell did not furnish any labor or equipment necessary to the excavation and, "since there had to be trucks there, I (defendant Lawrence) called the dump trucks." He called three. Robert L. Young owned one truck, and operated it; and defendant called the Edwards boys, Robert and Eddie. They had two dump trucks. Defendant Lawrence at that time regularly used these three men, and their trucks.

Eddie Edwards was at the excavation site the morning of September 8th. Defendant Lawrence knew who was going to drive the Eddie Edwards truck that day. Henry A. Smith was operating the Eddie Edwards truck on this job with the consent of Eddie. Eddie had no control over the details of the excavation work. "Q. And Smith was actually hauling dirt for you, on the day of the accident, * * * pursuant to this agreement you had between yourself and Eddie Edwards? A. Yes, sir. * * * He was hauling for me. Q. Hauling dirt for you, Edwards was? A. Edwards was hauling dirt for me. Q. For you? A. Yes, sir."

Lloyd E. Sims was the agent, employee and servant of defendant in the work of excavation. Sims operated the hi-loader.

In the morning of September 8, Sims, at the direction of defendant, graded a ramp for the use of the truck drivers in dirt-hauling movements between the site of the excavation and the street. That morning defendant had driven his service truck to the site, and had parked it on the north side of 57th, south of the excavation.

Defendant Lawrence had told the truck owners what time they were to report for work, and he "probably" told them whether they were to report for work the following morning.

The truck drivers drove in rotation up to the hi-loader to receive the excavated dirt. Thus, said defendant, was the work equalized among them. As stated, defendant said Sims was his, defendant's, employee, and Sims would "spot" the hi-loader where he wanted the truck drivers to load. Wherever "the hi-loader stopped, they would have to back up to it. * * *." When it was time to load, the hi-loader operator "would just raise the (hi-loader) bucket, with the bucket of dirt." The hi-loader operator would nod his head when they were loaded and when he nodded his head, then they knew it was time to move.

Sims and the truck drivers stopped for lunch at twelve, and, after lunch * * * when the hi-loader "starts up," that is when they (the truck drivers) go to work. They stopped work for the day when the hi-loader stopped—that was "it." If the "hi-loader wanted to work until 4:30, they worked; and if he wanted to work until 5:30, they worked until then."

The witness, defendant Lawrence (by deposition) had further testified that the "machine got paid eleven dollars an hour; and at that time, I don't recall right off-hand * * * whether they had already raised to five; but whatever I charged Southard for the job went directly to the trucks." He, defendant Lawrence, billed Southard for the excavating-machine time and the truck time, and collected from Southard for it, and paid the owners of the trucks. The only equipment at the place was owned by defendant Lawrence, or equipment he made arrangements to have there.

"Q. Well, as I understand it, your agreement with Southard was you were to get eleven dollars an hour for the hi-loader and operator, and * * * five dollars an hour for the trucks and driver, * * *? A. Yes, sir."

Plaintiff also introduced a portion of a deposition of the (then) defendant Henry A. Smith in which Smith stated the facts of

the event occurring immediately prior to the casualty, in part as follows * * *

"I got loaded and took a load to where we were dumping and took it back and Lloyd Sims was loading a truck and there wasn't any room up on the top of the hill for two trucks, so I parked it on the street. I toed the wheels into the curb and left it out of gear with the emergency brake on. I stepped out of the truck and the pick-up truck [defendant's service truck] that had water in it was approximately ten feet in front of where I parked the truck. I got out to get a drink and when I was drinking * * * then all at once I heard a commotion * * *."

In testifying in his own behalf as a defendant, Henry A. Smith said he reported, September 8th, to Lloyd E. Sims, and he took his instructions from Lloyd E. Sims.

Lloyd E. Sims testified as a witness in behalf of defendant Lawrence. The witness said he operated the excavating machine. He kept the time the truck drivers worked and turned the time in to defendant Lawrence. The machine started in the morning when he (Sims) got there. When he was hungry he "shut down and went to lunch." The truck drivers couldn't do any work if he wasn't working. "When I shut the machine down, they had to stop too." The witness had instructed Smith to come back the next day.

In examining the evidence stated supra, we have thought the inferences are reasonably supported that defendant Lawrence had entered into a contract with the builders to do the excavation of the basement at the stated site, and in the performance of the contract it was necessary to dispose of surplus dirt. This defendant did by means of trucks, and he called upon three truck owners whose services and their trucks defendant regularly had used especially when in his excavation work the disposal of surplus dirt was necessary.

The three truck owners reported for work in the morning of September 8th, as defendant Lawrence had directed, but Henry A. Smith drove the Eddie Edwards truck to the site of the excavation. Eddie Edwards had consented to the use of his truck by Smith in hauling the surplus dirt from the excavation, and it could be reasonably inferred it was agreed between defendant and Eddie Edwards that Smith was to drive the Eddie Edwards truck as a substitute for Eddie, the owner. The fact that Smith drove the Eddie Edwards truck in the subsequent hauling operation is substantial evidence that Smith had acceded to the arrangement. The facts thus far examined do not compel the conclusion that Eddie Edwards, between himself and defendant, had the right to effect the substitution. The facts thus far examined reasonably support the inference that the substitution was effected by and agreed upon by defendant, Eddie Edwards and Smith. And the inference is permissible that Eddie Edwards did not supervise the work of Smith in the subsequent work and operation of the truck in hauling dirt for defendant.

Since Smith was actually hauling dirt for defendant and not apparently in response to the exercise of any right to effect a substitution on the part of Eddie Edwards, and since there was no evidence introduced by plaintiff tending to show that Eddie Edwards in any way supervised Smith's work in hauling for defendant, we have the opinion the language used in the cases of Talley v. Bowen Construction Company, supra; State ex rel. Chapman v. Shain, 347 Mo. 308, 147 S.W.2d 457, quashing the record in Perdue v. Chapman, Mo.App., 137 S.W.2d 483; Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S.W.2d 918; and Coul v. George B. Peck Dry Goods Co., 326 Mo. 870, 32 S.W.2d 758, in speaking of the right, and the exercise of it by another, of substitution of or subsequent supervision over a substituted driver as factors, in whole or in part decisive, in determining the relationship between a defendant and an alleg-

ed servant, is not in whole or in part as a matter of law decisive in determining the relationship between defendant Lawrence and the alleged servant Smith in our case.

We agree with defendant's argument that defendant's testimony, that Smith *was actually hauling dirt for him,* does not quite afford the substantial basis for a conclusion that Smith was hauling dirt for him "as his servant." But the above emphasized does afford the basis for a fair inference that the hauling of the dirt at, out of and from the excavation was considered by defendant as in the fulfillment of defendant's own contractual responsibility.

Now the evidence introduced by plaintiff of the facts of the actual management of and the directions given by defendant and his employee Lloyd E. Sims in the excavation operation in governing the physical conduct of the truck drivers, Robert L. Young and Robert Edwards, is the same and also applicable with respect to the control and right of control of the physical conduct of the truck driver Smith. Consequently, we believe the evidence introduced by plaintiff reasonably puts the driver Smith in the same category as Robert L. Young and Robert Edwards, that is, in the same category with respect to the respondeat-superior issue.

Plaintiff's evidence reasonably tends to show that defendant paid the expense of the truck-hauling operation on an hourly basis. Defendant charged this expense to the excavating operator, and collected it from the builders along with the hourly consideration he charged the builders for the service of the excavating machine and its operator Sims. The service of the truck drivers had been regularly used by defendant. Defendant or his employee Sims kept track of the truck drivers' time; equalized the work among them; told them the hour they were to report for work in the morning and in effect, told them how long they were to work that day and whether they were to report for work the next day. It reasonably could be inferred that the physical work and conduct of the truck drivers in its performance were commanded, managed, directed and controlled (verbally, by signal, and by directing manipulation of the excavating machine) by defendant Lawrence or his employee Sims, and that inferentially the truck drivers were subject to the right of control of defendant Lawrence.

Moreover and additionally, from a study of the evidence in this opinion stated, we believe it fairly could be inferred that defendant looked upon the drivers of the trucks as one would look upon one's employee, and that the drivers of the trucks looked upon him as their employer and gave their time and labor in his service as would one to an employer; that is, from the evidence, defendant Lawrence and the drivers of the trucks reasonably seem to have believed their relationship was that of master and servant.

We think the (reasonably-to-be-inferred) authoritative directions and control exercised by defendant could fairly be distinguished by a jury from mere suggestions as to details or the necessary co-operation where the work furnished is a part of a larger operation. Compare Scherer v. Bryant, 273 Mo. 596, 201 S.W. 900.

Our conclusion is that there was sufficient substantial evidence introduced in this case to reasonably justify a finding by a jury that defendant Lawrence had employed Henry A. Smith to perform service in his affairs and whose physical conduct in the performance of the service was controlled by and was subject to the right of control of defendant Lawrence.

The trial court's order awarding plaintiff a new trial should be affirmed.

It is so ordered.

PER CURIAM.

The foregoing opinion by PAUL VAN OSDOL, Special Commissioner, is adopted as the opinion of the court.

All concur.