Honorable George W. Lehr State Auditor State Capitol Building Jefferson City, Missouri 65101
Dear Mr. Lehr:
This opinion is in response to your request as follows:
 "Section 6.2 of the Omnibus State Reorganization Act of 1974 states that the staff, professional, clerical and research personnel of the Department of Higher Education shall not, in any fiscal year, exceed twenty-five full-time personnel, regardless of the source of funding.
 "The question is, does this limitation on staff size include only those paid from personal service appropriation, or does it include full-time personnel paid from operating appropriation, contractual services classification, and part-time work-study personnel also paid from operating appropriation?"
Section 6.2 of the Omnibus State Reorganization Act of 1974 (p. 1267, App. B, RSMo Supp. 1975) states in relevant part:
 ". . . The coordinating board shall appoint a commissioner of higher education who shall be the chief administrative officer for the coordinating board. The coordinating board may, in order to carry out the duties prescribed for it in subsections 1, 2, 3, 7, and 8 of this section, employ such professional, clerical and research personnel as may be necessary to assist it in performing those duties, but this staff shall not, in any fiscal year, exceed twenty-five full-time equivalent employees regardless of the source of funding. . . ."
You have indicated that you are particularly interested in two programs involving the Department of Higher Education (hereinafter "the Department"). One program involves students from Lincoln University on a work-program internship basis. the other program involves inmates from the State Penitentiary on a work-release basis. Both programs are funded from the Department's operations appropriation.
The Department has provided us with the following relevant details concerning the two programs. The participants work on matters relating to processing applications under the "student-grant" program. The work hours and pay levels of the participants are established between the Department and those individuals and compensation is based on an hourly rate. All work is performed at the Department under staff supervision and all necessary materials are supplied by the Department. The need for the work is cyclical because student grant applications are received in concentrated periods during the year. The nature of the work is generally clerical and requires no specialized skill or professional education.[1] The work is part of the performance of the normal duties of the Department.
To compensate the Lincoln University students,[2] the Department pays Lincoln University an amount calculated to cover compensation for the work performed and an amount equal to any and all payments required to be made by the University under state workmen's compensation laws, F.I.C.A., or other applicable laws. The University issues the paycheck to each student. For the inmates, the Department draws a check payable to the individual and sends it to the Division of Corrections. No deductions are withheld from the check.[3]
The issue presented by your request is whether the work of the individuals in these two programs should be counted against the staff limitation previously quoted.
Initially, there is a question concerning the interpretation of the phrase "twenty-five full-time equivalent employees." In Opinion No. 212, Bond, issued May 10, 1974, this office considered the interpretation of the term "FTE" as contained in an appropriation bill. After finding no statutory or other definition of the term, we stated as follows:
 "This does not completely leave the meaning unresolved since you have further informed us that you believe the letters mean `full-time equivalent,' and that this phrase appears in the instructions for preparation of personal service details in the budget forms developed by the Office of Administration. That definition is set out as follows:
 Full-time Equivalent Computation:
 The full-time equivalent number for existing positions as well as project employees will be computed in the following manner. A full-time equivalent employee is one working a full year, less vacation and holidays. For most agencies, a full-time position will be occupied by an employee working 233 days per year at 8 hours per day. An employee (existing positions or project employee) working less than this amount will be designated by showing the appropriate fractional number in the `full-time equivalent' column.
 "The meaning of `FTE' in C.C.S.H.B. No. 1004 is still, in our opinion, legally unclear, but for purposes of further discussion, we will assume it means `full-time equivalent' as defined above."
In the absence of further definition from the General Assembly, we believe it is equally valid to adopt the "budget form" definition for the purpose of construing the term "full-time equivalent employees" in Section 6.2.
Resolution of the issue turns on whether these individuals are considered employees of the Department or independent contractors. Each case turns on its own facts. Maltz v. Jackoway-Katz Cap Co.,82 S.W.2d 909, 916 (Mo. 1934).
The Missouri Supreme Court has most recently expressed the appropriate test in Cline v. Carthage Crushed Limestone Company,504 S.W.2d 102, 105-109 (Mo. 1973), as follows:
 "This Court has previously applied the tests laid down in the Restatement of Agency 2d, § 220, p. 485, in determining whether a questioned relationship is that of master and servant or employer and independent contractor. Dean v. Young, 396 S.W.2d 549, 553 (Mo. 1965); Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 108 S.W.2d 58, 61[3-5] (1937). We accept those standards in deciding this appeal, and give a brief rescript of the evidence relating to each statement of the Restatement criteria:
 `(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
 `(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
 `(a) the extent of control which, by the agreement, the master may exercise over the details of the work; * * *.'
* * *
 `(b) [W]hether or not the one employed is engaged in a distinct occupation or business; * * *.'
* * *
 `(c) [T]he kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; * * *.'
* * *
 `(d) [T]he skill required in the particular occupation; * * *.'
* * *
 `(e) [W]hether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; * * *.'
* * *
 `(f) [T]he length of time for which the person is employed; * * *.'
* * *
 `(g) [T]he method of payment, whether by the time or by the job; * * *.'
* * *
 `(h) [W]hether or not the work is a part of the regular business of the employer; * * *.'
* * *
 `(i) [W]hether or not the parties believe they are creating the relation of master and servant; * * *.'"
The right to control is the ultimate and decisive test. Klaberv. Fidelity Bldg. Co., 19 S.W.2d 758 (K.C.Mo.App. 1929); Sargent v.Clements, 88 S.W.2d 174 (Mo. 1935); Jokisch v. Life and CasualtyInsurance Company of Tennessee, 424 S.W.2d 111 (St.L. Ct.App. 1967). See also: Handley v. State, Division of Employment Security,387 S.W.2d 247 (K.C.Mo.App. 1965); Dean v. Young, 396 S.W.2d 549 (Mo. 1965); Madsen v. Lawrence, 366 S.W.2d 413 (Mo. 1963); and Talley v.Bowen Construction Company, 340 S.W.2d 701 (Mo. 1960).
As the previously cited facts reveal: all work is performed at the Department under staff supervision; the nature of the work is generally clerical and involves no training in a distinct occupation or skill. The work is considered part of the performance of the normal duties of the Department and is not the type of work normally done by a specialist without supervision; the Department supplies all materials and the place of work; the length of the employment period is determined by need based upon cyclical fluctuation in student-grant applications; and participants are paid by the hour.
We are compelled to conclude that the Department "employed" the participants to perform services in its affairs and controlled the physical conduct of the participants in the performance of said services.Madsen, supra. Also: Jokisch, supra; Handley, supra at 254.
Therefore, we conclude that the work of these participants should be computed against the staff limitation imposed by Section 6.2 of the Omnibus State Reorganization Act of 1974. In reaching this conclusion, we in no way give our opinion as to the appropriateness of whether such employees should be paid out of personal services or operations.
CONCLUSION
It is the opinion of this office that the work of individuals, who perform duties for the Department of Higher Education, under work-release or work-internship programs, should be computed against the staff limitation contained in Section 6.2 of the Omnibus State Reorganization Act of 1974.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Andrew Rothschild.
Yours very truly,
 JOHN C. DANFORTH Attorney General
[1] The Department has informed us that individuals have progressed to levels of more sophisticated work.
[2] The Department has informed us that, as of June 21, 1976, one individual is presently involved in this program. Three other individuals were involved on a part-time basis from January through May, 1976.
[3] The Department has informed us that, as of June 21, 1976, one inmate is presently involved in this program.